585 A.2d 36

**COMMONWEALTH of Pennsylvania**

v.

**Wesley Alfred JACKSON, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 5, 1990.

Filed Jan. 15, 1991.

Leigh P. Narducci, Blue Bell, for appellant.

Mary M. Killinger, Asst. Dist. Atty., Norristown, for Com., appellee.

Before CAVANAUGH, OLSZEWSKI and FORD ELLIOTT, JJ.

OLSZEWSKI, Judge:

In this case, appellant appeals from the judgment of sentence of the Court of Common Pleas of Montgomery County, following his conviction for rape and involuntary deviate sexual intercourse. (18 Pa.C.S. §§ 3121, 3123). He primarily alleges ineffective assistance of counsel, and violations of Rule 1100 of the Pennsylvania Rules of Criminal Procedure and 42 Pa.C.S.A. § 9718, regarding mandatory sentencing for offenses against infants. We find no error and must affirm.

The factual and procedural history of the instant case requires close attention. Appellant Jackson was arrested in September, 1988, and charged with raping a four-year-old girl and transmitting gonorrhea to her. Appellant was tried before the Honorable William Nicholas, sitting without a jury, on May 23–24, 1989. At that time, appellant was convicted of rape and involuntary deviate sexual intercourse, as well as indecent assault and statutory rape. (18 Pa.C.S. §§ 3126, 3122). The latter two crimes were considered merged with the crimes sentenced. (Opinion at 1).

Appellant's counsel at trial was Abraham Hobson, serving as public defender. Mr. Hobson filed a timely motion for a new trial, raising two issues: (1) that the evidence was insufficient; and (2) that the court erred in denying a continuance requested by the defense so that telephone records of Poindexter Brown, a Commonwealth witness, be subpoenaed. Before argument on the motion, Mr. Hobson left the public defender's office, and was replaced by William English. After consulting with appellant, Mr. English determined that appellant sought to claim ineffective assistance of counsel. Therefore, Mr. English filed a motion for appointment of private counsel to represent appellant at the post-verdict stage and subsequently, if necessary.

On September 27, 1989, Judge Nicholas issued an order appointing Leigh Narducci to represent appellant, and granted leave to file an amended motion for new trial and in arrest of judgment within 45 days. Mr. Narducci proceeded to file additional motions in support of the request for new

trial. Allegations included that trial counsel was ineffective for: (1) failing to petition for funds to hire an expert specifically on the issue of the nature and transmission of the disease, gonorrhea; and (2) failing to advise appellant regarding jury trial waiver. The court conducted hearings on the ineffectiveness claims on January 29, and February 26, 1990.

Appellant's motion for new trial was denied on March 26, 1990. Sentencing occurred on April 23, 1990. The sentence consisted of concurrent sentences of six-to-fifteen years' imprisonment to date from September 27, 1988. (N.T. Sentencing, at 34). Appellant filed a petition for reconsideration of sentence on April 25, 1990, which was denied on the same date. Pursuant to court order dated May 8, 1990, appellant filed a statement of matters complained of on appeal. (Pa.R.A.P. 1925a).

## I.

On appeal, appellant first argues that the trial court erred by not allowing him to hire an expert witness in the area of venereal diseases. He claims that trial counsel was aware of this need, and was also aware of available medical literature and medical opinion to support the expert testimony. (Appellant's brief, at 6). Our careful review of the record and briefs in the case leads us to disagree with appellant's claim. We must agree with the Commonwealth that the record is

> devoid of any information to support appellant's position that such an expert would have helped his defense. In fact, the clear import of the testimony at trial and at the post trial hearing is that there is no such expert, that is a qualified expert who could testify as to any known case where gonorrhea was transmitted by other than sexual contact.

(Appellee's brief, at 2).

The benchmark for establishing ineffective assistance of counsel is whether counsel's conduct "so under-

mined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The burden of establishing ineffective assistance rests upon appellant because counsel's stewardship is presumed to be effective. *Commonwealth v. McNeil,* 506 Pa. 607, 487 A.2d 802 (1985); *Commonwealth v. Smith,* 380 Pa.Super. 619, 552 A.2d 1053 (1988). Appellant's obligation is to demonstrate both that the "omission or commission by counsel was arguably ineffective and the likelihood that he was prejudiced as a result." *Commonwealth v. Pierce,* 515 Pa. 153, 161, 527 A.2d 973, 976 (1987).

■ Our initial inquiry in an ineffectiveness claim must always be "whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim." *Commonwealth v. Durst,* 522 Pa. 2, 4, 559 A.2d 504, 505 (1989). It must next be determined that the particular course followed by counsel had no reasonable basis designed to effectuate the client's interest. *Id.* Finally, it is necessary to establish the precise manner in which counsel's omission or commission prejudiced appellant. Prejudice in the context of a claim of ineffective assistance of counsel is determined by an evaluation of whether, "but for the arguably ineffective act or omission there is a reasonable probability that the result would have been different." *Commonwealth v. Petras,* 368 Pa.Super. 372, 376, 534 A.2d 483, 485 (1987).

■ In making allegations of ineffectiveness, an appellant must allege sufficient facts upon which a reviewing court can conclude that trial counsel may have been ineffective. As our Supreme Court has aptly stated,

Assertions of ineffectiveness in a vacuum cannot be ineffectiveness. Counsel who is alleging ineffectiveness must set forth an offer to prove at an appropriate hearing sufficient facts upon which a reviewing court can con-

clude that trial counsel may have, in fact, been ineffective. This Court will no longer consider claims of ineffective assistance of counsel in the abstract.

*Commonwealth v. Pettus*, 492 Pa. 558, 563, 424 A.2d 1332, 1335 (1981). Finally, we note that appellants cannot meet their burden in an ineffectiveness hearing with the bare assertion that the defense might have been handled differently. *Commonwealth v. McKenna*, 498 Pa. 416, 446 A.2d 1274 (1982).

 In light of our narrow scope of review, we find no ineffectiveness in the case at bar. The whole issue of ineffectiveness here hinges on the present state of scientific knowledge of the disease, gonorrhea. Under any of the tests for ineffectiveness mentioned thus far, appellant must state sufficient facts for appellate determination. Instantly, appellant has merely stated theories upon which to base his claim that an expert could be called who would state with certainty that gonorrhea can be transmitted non-sexually. Under the facts of this case, appellant was the victim's baby-sitter. Appellant, therefore, did not deny contact with the little girl, but merely *sexual* contact. Both appellant and victim were diagnosed with Neisseria gonorrhea, one of fifty types of the disease.

As thoroughly documented in the record and reviewed in the trial court opinion, the Commonwealth presented the testimony of two separate medical experts. Dr. Evans, a pediatrician, testified that Neisseria gonorrhea is "transmitted through intimate sexual contact—sexual intercourse or other sexual acts." (N.T. Trial, at 78). On cross-examination, the witness was asked if he had read any confirmed cases where gonorrhea had been contracted through non-sexual acts. He answered in the negative. (N.T. Trial, at 78–79). Furthermore, also on cross-examination, Dr. Evans stated that there was only a remote possibility that the gonorrhea organism would survive long enough outside the body to be transmitted through masturbation. (N.T. Trial, at 99–100).

The Commonwealth also presented the testimony of Dr. Bruce Kleger, Director of the Division of Clinical Microbiology for the Pennsylvania Department of Health Laboratory. Dr. Kleger testified that "Neisseria bacteria is very fragile and won't live outside the body." (N.T. Trial, at 103). Dr. Kleger also testified that the incubation period for the bacteria is from two days to one week, and that Neisseria is not a commonly encountered strain of the bacteria. (N.T. Trial, at 123).

Ultimately, Dr. Kleger testified that "With a reasonable degree of certainty, I can say that the victim acquired the strain from Wesley Jackson." (N.T. Trial, at 113). He based his conclusion on the fact that there was no difference in the strains of the bacteria found in the victim and appellant, and on the fact that Neisseria is not a common strain. (N.T. Trial, at 122). Appellant now relies on a comment in a police report regarding a conversation with a physician from the Center for Disease Control in Atlanta, Georgia, in which the doctor stated that no one could say with absolute certainty that the transmission of gonorrhea is sexual. (N.T. Motion for New Trial, at 50).

Appellant further attempts to bottom his argument on the *Merck Manual,* treating it as a learned treatise. The *Merck Manual* states: "Sexual intercourse is the principal mode of transmission, but nonvenereal innoculation is possible, especially in female infants and in children under puberty." (N.T. Motion for New Trial, at 51). Under Pennsylvania law, and in common usage as well, treatises are systematic expositions in writing including methodical discussion of facts and principles. Learned treatises are highly reliable because they are written for professionals, they are subject to scrutiny and testing by experts in the field, and the writers are unlikely to be partial with regard to any specific litigation. *See, e.g.,* Packel & Poulin, *Pa. Evidence* § 803.18 (1987); *Webster's New College Dictionary* (1980 Ed.).

As demonstrated by examining the relevant page from the manual, presented as Defendant's Exhibit 2, the *Merck*

*Manual* is a commercial publication which abstracts scientific data. It is not subject to testing. Appellant does not present any cases which might arguably support his claim. Moreover, Attorney Hobson clearly chose not to bring in his own medical expert, for strategic reasons, at trial. In Mr. Hobson's own exact words,

> And I am aware that reasonable doubt in a case is not all doubt. I remember the charges that the Judges give. So I believe if I were to have brought an expert in this case, the best I could have hoped for that an expert would say, would have said, yes, it is theoretically possible, period. I believe that if the D.A. cross-examined that expert, I believe that the D.A. could have taken what I purported to be a shield and turned it into a semaphore and cut my head off and destroy my case.

> And also given my position as a defense lawyer ... and keep in mind that I was trying to win the case ... I believed that if I were going to win the case the way to win it would be to turn the Commonwealth witnesses around, to have them equivocate to try and create on the record some question.

> As I say, I believed Doctor Evans, I reviewed the Notes and I believe, on the record, he told this Court and told me everything that my expert would have said. I believe what he said is consistent with what I understood the present medical state is today about gonorrhea, sexual transmission.

(N.T. Motion for New Trial, at 24–25).

Although not directly on point, our Court has ruled on the failure to pursue exculpatory medical evidence in *Commonwealth v. Weinder*, 395 Pa.Super. 608, 577 A.2d 1364 (1990). In *Weinder,* the Superior Court refused to consider a claim of ineffectiveness based on possible exculpatory evidence only. The Court noted that appellant's claim was "persuasive in theory, but deficient in fact." *Id.* at 1368. The case at bar lacks sufficient factual support for a claim of ineffectiveness. The trial court was correct in concluding that appellant did not meet his burden of proving ineffec-

tive assistance of counsel because he has not demonstrated prejudice by his attorney's actions. (Opinion at 13).

## II.

█ Appellant next alleges a Rule 1100 violation in that he was neither discharged on nominal bail nor was his case tried upon the expiration of 180 days from the date of his incarceration. Pa.Rules Civ.Proc.Rule 1100(a)(2). Contrary to appellant's claim, we find no Rule 1100 violation. Appellant was brought to trial in a timely manner. It is true that appellant was incarcerated beyond the 180th day, and that he was brought to trial approximately two months after the expiration of the 180th day, but Rule 1100 mandates that the Commonwealth has 365 days in which to bring a criminal defendant to trial. (Opinion at 16–17). Under Rule 1100(e), if a defendant is incarcerated for more than 180 days, he is entitled to release on nominal bail.

Careful review of the record in the instant case reveals that on May 15, 1989, Judge Lowe granted appellant's motion for nominal bail. Bail was set at $1.00. Appellant was not released, however, because other charges were pending for which he did not post bail. (Opinion, at 17). Furthermore, appellant was tried in a timely manner, within 365 days of the filing of the criminal complaint against him on September 26, 1988. Thus, appellant's claim regarding Rule 1100 is without merit.

## III.

█ Appellant next argues that the evidence was insufficient to sustain the guilty verdicts. We must disagree. Our Supreme Court, in *Commonwealth v. Hardcastle*, 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988), stated the following test for sufficiency of the evidence:

The reviewing court must determine whether, viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, and drawing all reasonable inferences favorable to the Commonwealth, there is suffi-

cient evidence to find every element of the crime beyond a reasonable doubt.

Furthermore, the Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence. *Commonwealth v. Hunter*, 381 Pa.Super. 606, 610, 554 A.2d 550, 551 (1989). The entire trial record must be considered. In the instant case, the record reveals that Judge Nicholas carefully considered all relevant information in determining appellant's guilt. (N.T. Trial, at 159–166). The verdict was bottomed on the evidence of the gonorrhea infection; the fact that appellant had the opportunity to be alone with the victim; the fact that no one else in the household had tested positive with the disease; and the fact that appellant had attempted to influence the testimony of the child's father, Poindexter Brown, by trying to get Mr. Brown to state that appellant did not have access to the child. (N.T. Trial, at 127–135). As Judge Nicholas aptly notes, evidence that a defendant has threatened or tried to influence witnesses is admissible to show the defendant's consciousness of guilt. *Commonwealth v. Hatten*, 344 Pa.Super. 362, 366 fn., 496 A.2d 837, 839 fn. (1985). (Opinion at 15). Appellant, himself, testified at trial, and was not found to be a credible witness. Thus, we must agree with the Commonwealth that the evidence was sufficient to support the verdict.

## IV.

█ Appellant's final argument concerns the mandatory minimum guidelines under 42 Pa.C.S.A. § 9718. Appellant admits that the Commonwealth gave notice of its intention to request imposition of a sentence pursuant to § 9718 in August, 1989. Appellant, however, argues that in order to effectuate a valid jury trial waiver, he should have been made aware not only of the statutory minimum, but also of the district attorney's intent upon conviction to seek imposition of mandatory sentences. (Appellant's brief, at 18–19). Appellant argues that such a notice should be served *prior* to trial because of the possibility that such notice might influence appellant's decision to waive his right to a jury

trial. Appellant provides no authority for his claim. The statute requires notice *following* trial, the procedure followed by the Commonwealth.

It is axiomatic that sentencing is a matter vested in the sound discretion of the trial court, and the lower court's judgment of sentence will not be disturbed absent abuse of discretion. *Commonwealth v. Green*, 494 Pa. 406, 431 A.2d 918 (1981). In reviewing sentencing matters, we accord great weight to the sentencing court, since it is in the best position to evaluate defendant's character, displays of remorse, defiance, indifference, and the overall nature and extent of the crime. *Commonwealth v. Fries*, 362 Pa.Super. 163, 167, 523 A.2d 1134, 1135 (1987), *alloc. den.*, 515 Pa. 619, 531 A.2d 427 (1987). Finally, a sentence will not be disturbed when it is demonstrated that the judge was aware of the sentencing considerations, and weighed all relevant factors in a meaningful fashion. *Commonwealth v. Devers*, 519 Pa. 88, 546 A.2d 12 (1988).

In the instant case, the transcript of the sentencing proceeding reveals that Judge Nicholas weighed the circumstances of the offense along with the background and personal attributes of appellant Jackson. (N.T. Sentencing, at 28). *See* 42 Pa.C.S.A. § 9721; *Commonwealth v. Smith*, 369 Pa.Super. 1, 5–6, 534 A.2d 836, 838 (1987). In his colloquy on the record, Judge Nicholas stated:

> It was a circumstantial case, but I was certainly convinced beyond a reasonable doubt of the Defendant's guilt after all the evidence was considered ...
>
> Suffice it to say I was satisfied the Defendant was guilty then and I remained satisfied that there were no due process violations, no ... there was no violation of Defendant's right to the effective assistance of counsel in the person of Mr. Hobson, and that the trial result was reliable, that it was a reliable adjudication of guilt based on the evidence presented ...
>
> Whenever we're dealing with a young victim of crimes so serious, the court certainly must be mindful of the need to send a strong message to the Defendant and others

who would engage in similar conduct. I believe for all those reasons the appropriate sentence in this case is a sentence in the aggravated range. Frankly, I do not believe the mandatory minimum sentence is adequate for this purpose.

(N.T. Sentencing, at 28–29).

The court proceeded to describe what it considered to be aggravating circumstances:

And the aggravating circumstances are certainly the age of this child and the communication to her of a serious communicable disease, the circumstances where defendant was entrusted with the care of this child and notwithstanding that trust violated that trust by engaging in the conduct that I found him guilty of.

(N.T. Sentencing, at 30).

Based upon our review of the record, we find no abuse of discretion regarding the matter of sentencing. The sentencing court had the benefit of a pre-sentence report and considered all relevant factors, as previously discussed herein.

In summary, we find no error in any of the matters raised by appellant.

Judgment of sentence affirmed.

Concurring statement by FORD ELLIOTT, J.

Concurring Statement by FORD ELLIOTT, Judge:

I join in the majority's disposition of the Rule 1100, sufficiency of evidence and sentencing claims presented by appellant. However, I concur in their resolution of appellant's ineffectiveness claim in that I would find no ineffectiveness based solely on a determination that appellant's trial counsel had a reasonable basis designed to effectuate his client's interests.