OPINION BY STEVENS, P.J.E.:
Appellant Karrem Johnson appeals from the Order entered in the Court of Common Pleas of Philadelphia County on December 12, 2016, denying his first petition filed pursuant to the Post Conviction Relief Act.[1] Also before this Court are Appellant's Application for Remand filed on August 17, 2017, and counsel's Application to Withdraw filed on August 31, 2017. Following our review, we affirm the trial court's order, deny PCRA counsel's application for remand and deny PCRA counsel's application to withdraw without prejudice to pursue the issue he raised therein before the trial court.
A prior panel of this Court set forth the relevant facts and procedural history when addressing Appellant's direct appeal as follows:
Appellant was arrested and charged with [first-degree murder, burglary, possessing an instrument of crime (PIC), and three violations of the Uniform Firearms Act] following the shooting death of Christopher Lomax. At Appellant's trial, the Commonwealth presented multiple witnesses, beginning with Tyree Graham. Graham testified that in the late night and early morning hours of June 21 to 22, 2008, he and Lomax were celebrating Lomax's birthday at a Philadelphia bar called Rumors. N.T. Trial, 2/2/11, at 43-44. When two men left the bar at about 1:45 a.m., Graham saw Appellant, whom he knew by the nickname "Cutt," standing outside the entrance to the bar. Id. at 43, 48-49. Graham stated that as he and Lomax talked to some women outside the bar, he heard gunshots. Id. at 49-50. Graham started running to his car and, when he *1110 turned to look back, he saw Lomax lying on the ground. Id. at 50.
While Graham denied actually seeing who shot Lomax, the Commonwealth presented the testimony of Kwame Mapp and Jahmil Miller to refute that claim. First, Mapp testified that he knew both Tyree Graham and Cristopher Lomax, and had heard about Lomax's death from Graham. Id. at 110. Specifically, Mapp stated that at some point between one week and one month after Lomax's murder, Graham told him that he saw "a person by the name of Cutty" shoot Lomax. Id. at 112. Mapp claimed that Graham told him that he saw "Cutty" walk up from behind Lomax and shoot him, and that "Cutty" continued to shoot Lomax after Lomax was on the ground. Id. at 113, 116. On October 23, 2008, Mapp provided a statement to police regarding what Graham had told him about Lomax's shooting. Id. at 114.
The Commonwealth also called Jahmil Miller to the stand. Miller testified that on May 8, 2009, he provided police with a signed, written statement regarding Lomax's murder. N.T. Trial, 2/3/11, at 11. Therein, Miller stated that shortly after the shooting, Tyree Graham told him that "Cutt," i.e Appellant, and Lomax had an altercation inside Rumors bar, and that once outside, Graham saw Appellant pull out a gun and shoot Lomax. Id. at 13-14, 17, 21.
The Commonwealth also called Darnell Clark to the stand. Clark stated that he was friends with Christopher Lomax and was at Rumors bar with him the night that he was shot. N.T. Trial, 2/2/11, at 146. Shortly after the altercation, Lomax went outside the bar where he was shot. Id. at 148. Directly after the shooting on June 22, 2008, Clark gave police a description of the man he saw arguing with Lomax inside the bar. Id. at 151. Then, in October, Clark identified Appellant from a photo array as the man that Lomax argued with on the night he was shot. Id. at 153, 165-67.
Renee Smith[2] also testified for the Commonwealth. When Ms. Smith took the stand, she denied any knowledge of Lomax's murder. Accordingly, the Commonwealth confronted her with a statement she gave police in March of 2009. N.T. Trial, 2/3/11, at 80. In that statement, Ms. Smith said that she was at Rumors bar in the early morning hours of June 22, 2008. Id. at 88. There, she saw Lomax, whom she knew by the nickname "Mo-Mo." Id. at 86, 89. Ms. Smith told police that shortly after 1:00 a.m, she left the bar and was standing across the street from the bar's entrance waiting for her mother to pick her up. Id. at 90-91. Ms. Smith stated as she stood outside,
I heard the gunshot from over the park area. I looked across and saw that there was a circle of people around the two guys, the one who was shooting and the one who was getting shot. I didn't know that it Mo-Mo until afterwards because he was on the ground when the other guy was shooting.
Id. at 91. Ms. Smith also told police that "[t]he guy who was shooting was shooting down at the guy on the ground" and explained that the shooter fired "more than seven shots." Id. at 92. When police asked Ms. Smith if she knew the shooter, she stated that she recognized him as a rapper who "calls himself Cutt." Id. She told police that she had seen "Cutt" in the bar earlier that night. Id. at 93. When confronted with a photo array, Ms. Smith identified Appellant as the man she knew as "Cutt" who she saw shoot Christopher Lomax. Id. at 94.
*1111 Next, Lakia Bunch testified for the Commonwealth. She stated that she was at Rumors bar on the night of Lomax's shooting. N.T. Trial, 2/4/11 at 4. Ms. Bunch stated that she knew Appellant as "Cutt," and that she had known him all her life. Id. at 5. When asked if she witnessed Lomax's shooting, Ms. Bunch said she did not, claiming she had no knowledge regarding the circumstances of Lomax's death. Id. at 5, 24. At that point the Commonwealth confronted her with a signed, written statement that she provided to police on May 11, 2009. Id. at 6. In that statement, Ms. Bunch claimed that she witnessed Lomax's shooting, explaining that the shooter "shot [Lomax] like at least six or seven times." Id. at 15. Ms. Bunch further stated that she knew the shooter as "Cutt." Id. Ms. Bunch was then presented with a photo array and identified Appellant as the man she knew as "Cutt." Id. at 23-24.
Following this testimony regarding Lomax's shooting, the Commonwealth presented evidence relating to how Appellant was apprehended by police. For instance, the Commonwealth called Philadelphia Police Officer James Boone to the stand. Officer Boone stated that on July 28, 2008, almost a month after Lomax's murder, he and his partner, Officer White, were in a marked police car traveling on the 3100 block of Park Avenue at approximately 3:45 p.m. N.T. Trial, 2/3/11, at 144, 145. The Officers were patrolling this area because they had received a complaint of individuals selling drugs and loitering. Id. at 145. During the course of their patrol, Officer Boone and his partner observed Appellant and another man sitting on the porch of a home. Id. at 144, 145. The officers were patrolling this area because they had received a complaint of individuals selling drugs and loitering. Id. at 145. During the course of their patrol, Officer Boone and his partner observed Appellant and another man sitting on the porch of a home. Id. at 144, 145. When the officers asked Appellant if he lived there, Appellant "cursed at" them. Id. at 147. At that point, the officers exited their vehicle in order to conduct "a pedestrian investigation." Id. at 148. As Officer Boone and his partner, who were in full uniform, approached Appellant, he "jumped up, got onto the porch and started running southbound along the porch, along the porches, hurdling the wrought-iron porch fences going southbound on Park Avenue." Id. at 149. As the officers pursued him, Officer Boone saw Appellant "produce[ ] a black handgun in his right hand." Id. at 150. Officer Boone yelled "gun" numerous times to inform his partner that Appellant was armed. Id. at 151. Appellant then tripped over a wrought-iron railing and fell, losing his grip on the gun, which dropped to the floor of the porch. Id. at 150-51. Appellant got up and continued to flee, and Officer Boone recovered the gun from the porch floor. Id. at 151.
Appellant fled to a home on North Park Avenue where there were "a handful of people standing out front." Id. at 152. Officer Boone testified that Appellant "pushed an older black female out of the way and went [in]to this house with a younger black female and locked the door behind him." Id. At that point, Officer Boone and his partner called for police backup, including the S.W.A.T. unit. Id. When police subsequently accessed the home, they found Appellant hiding underneath a bed and arrested him. Id. at 153-54.
Evangeline Hamilton, the owner of the home which Appellant fled on July 28, 2008, also testified for the Commonwealth.
*1112 Ms. Hamilton stated that on that evening, she was on her porch when she saw Appellant running and "leaping over the porches." N.T. Trial, 2/7/11, at 12. Appellant ultimately ran inside her home. Id. at 12-15. When asked by the Commonwealth if Appellant "could have had permission" to go into her home, Ms. Hamilton replied, "Yes, because he's a friend of my daughter's." Id. at 16. However, the Commonwealth confronted Ms. Hamilton with statement she made to police at 8:15 p.m. on July 28, 2008. Id. at 20. Therein, Ms. Hamilton told police that she knew Appellant from the neighborhood, but did not say that he was a friend of her daughter. Id. at 25. Furthermore, when asked if she gave Appellant permission to enter he home, Ms. Hamilton told police, "No, I didn't." Id. Ms. Hamilton also declared in her statement to police that she was "willing to prosecute [Appellant] for entering [her] house without [her] permission." Id. at 26.
Lastly, Kenneth Lay, the Philadelphia Police Forensic Science Bureau's firearms laboratory supervisor, testified for the Commonwealth as an expert in firearm identification and toolmarking. N.T. Trial, 2/4/11, at 119-20. Mr. Lay testified that he examined ten fired cartridge casings, as well as two "bullet specimens" found at the crime scene. Id. at 129-30. Mr. Lay also examined one "bullet specimen" recovered from Lomax's body. Id. at 130. Mr. Lay ultimately compared these casings and bullets to the gun discarded by Appellant during the July 28, 2008, pursuit by Officer Boone. Id. at 128. In regard to the bullet specimens, Mr. Lay could not say definitively that they came from Appellant's gun. Id. at 144. However, he opined that it was possible that those bullets could have been fired from a semiautomatic 9mm pistol, which was the same type of gun recovered from Appellant. Id. As for the fired cartridge casings, Mr. Lay testified that he was able to determine, to a reasonable degree of scientific certainty, that all ten of those casings were fired from Appellant's gun. Id. at 149,154.
___
[2] Ms. Smith was also referred to as Renee Taylor during Appellant's trial. It is unclear which is her legal surname.
Commonwealth v. Johnson , No. 457 EDA 2011, unpublished memorandum at 1-7, 60 A.3d 581 (Pa.Super. filed August 27, 2012).
At the conclusion of his jury trial, Appellant was convicted of the aforesaid crimes and sentenced to an aggregate term of life in prison. Appellant timely filed a direct appeal wherein he presented seven issues for this Court's review. After finding several issues waived and no merit to the others, this Court affirmed Appellant's judgment of sentence. Commonwealth v. Johnson , supra .
On September 27, 2012, Appellant filed a petition for leave to file a petition for allowance of appeal nunc pro tunc , and the Pennsylvania Supreme Court granted the same. Appellant filed his petition for allowance of appeal on December 3, 2012, and our Supreme Court denied the petition on September 25, 2013. Appellant's petition for Writ of Certiorari was denied by the United States Supreme Court on May 19, 2014.
On March 22, 2015, Appellant timely filed a pro se petition pursuant to the PCRA. Counsel was appointed and filed an amended petition on November 28, 2015. The Commonwealth filed its motion to dismiss Appellant's PCRA petition on July 18, 2016.
Following its independent review of the record along with Appellant's PCRA petition, the Commonwealth's motion to dismiss the petition, and Appellant's response *1113 thereto, the PCRA court issued its notice to dismiss the petition without an evidentiary hearing pursuant to Pa.R.Crim.P. 907 on November 10, 2016. The PCRA court entered its Order dismissing Appellant's PCRA petition on December 12, 2016. Appellant filed a timely notice of appeal on December 14, 2016.
On December 20, 2016, the PCRA court directed Appellant to file a concise statement of the matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed the same on December 22, 2016, wherein he raised the following six claims he presents in his appellate brief for this Court's review:
A. Was trial counsel ineffective when he failed to preserve for appellate review the issue of the illegality of the pursuit of Appellant and the recovery of a weapon since the police lacked reasonable suspicion to conduct an investigative detention in violation of Appellant's rights under the Constitutions of the United States and Pennsylvania?
B. Was trial counsel ineffective when he failed to preserve for appellate review the issue of the trial court's grant of the Commonwealth's motion to consolidate Appellant's burglary and homicide cases by objecting to the consolidation in violation of Appellant's rights under the Constitutions of the United States and Pennsylvania?
C. Was trial counsel ineffective when he failed to preserve for appellate review the issue of the trial court's ruling allowing the Commonwealth to impeach Renee Taylor/Smith with her prior inconsistent statement in violation of Appellant's rights under the Constitutions of the United States and Pennsylvania?
D. Was trial counsel ineffective when he failed to raise in the direct appeal the issue of testimony concerning the prison assault committed against Commonwealth witness Jahmil Miller, failed to request a cautionary instruction concerning this testimony and actually requested a consciousness of guilt instruction in violation of Appellant's rights under the Constitutions of the United States and Pennsylvania?
E. Was trial counsel ineffective when he failed to raise in the direct appeal the issue of the trial court's denial of a motion for mistrial made as a result of the prosecutor's misconduct during summation in violation of Appellant's rights under the Constitutions of the United States and Pennsylvania?
F. Is Appellant entitled under the Constitutions of the United States and Pennsylvania to a new trial based upon the after-discovered evidence with regard to the corrupt and criminal activities of Detective Ronald Dove?
Brief for Appellant at 4-5.
Our well-settled standard and scope of review for the denial of a PCRA petition is as follows:
We review the denial of PCRA relief for a determination of whether the PCRA court's findings are supported by the record and free of legal error. A petitioner is eligible for PCRA relief only when he proves by a preponderance of the evidence that his conviction or sentence resulted from one or more of the circumstances delineated in 42 Pa.C.S.[A.] § 9543(a)(2).
Commonwealth v. Natividad , 595 Pa. 188, 206, 938 A.2d 310, 320 (2007) (citations omitted).
To be eligible for relief under the PCRA, an appellant must prove that his conviction resulted from one of several enumerated events, including the ineffective assistance of counsel. See 42 Pa.C.S.A. § 9543(a)(2)(ii).
*1114 It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error. See Commonwealth v. Pierce , 515 Pa. 153, 527 A.2d 973, 975-76 (1987) ; Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The PCRA court may deny an ineffectiveness claim if "the petitioner's evidence fails to meet a single one of these prongs." Commonwealth v. Basemore , 560 Pa. 258, 744 A.2d 717, 738 n.23 (2000).... Because courts must presume that counsel was effective, it is the petitioner's burden to prove otherwise. See Pierce , supra ; Commonwealth v. Holloway , 559 Pa. 258, 739 A.2d 1039, 1044 (1999)....
Natividad , supra , 595 Pa. at 207-08, 938 A.2d at 321 ; see also Commonwealth v. Hall , 582 Pa. 526, 537, 872 A.2d 1177, 1184 (2005) (stating an appellant's failure to satisfy any prong of the Pierce ineffectiveness test results in a failure to establish the arguable merit prong of the claim of ineffectiveness).
Appellant first argues trial counsel was ineffective for failing to challenge the officers' pursuit of him and recovery of his weapon as illegal on the basis that the officers lacked reasonable suspicion to detain Appellant. Appellant notes that on direct appeal, this Court found this issue waived because Appellant's motion to suppress did not allege that the officers unlawfully seized him without reasonable suspicion but, instead, challenged whether the officers had probable cause to arrest him. Brief for Appellant at 27 (citing Commonwealth v. Johnson , No. 457 EDA 2011, unpublished memorandum at 16-17, 60 A.3d 581 (Pa.Super. filed August 27, 2012) (citing Appellant's Motion to Suppress, 5/21/09, at 1) ).
Initially, we observe that trial counsel vehemently argued at the suppression hearing: "the contention of [ ] defense counsel and [Appellant], the position of [Appellant] at the time the police arrived on the scene, they had no reasonable suspicion or probable cause to interdict [Appellant] , and at that time [Appellant] was at liberty to do what he did, and that is, to leave the area." N.T. Motion, 2/1/11, at 7-8, 77-78. After hearing testimony on Appellant's motion and the Commonwealth's motion for consolidation, the suppression court concluded that the officers' initially questioning of Appellant as to whether he lived in the home on whose steps he was loitering was in response to numerous nuisance complaints from neighbors and constituted a mere encounter requiring no level of suspicion. N.T. Motion, 2/1/11, at 83-84.[2]
The question of whether officers needed some level of requisite cause at the time they initially approached Appellant is governed by the type of encounter the police initiated at that time. In re D.M. , 566 Pa. 445, 451, 781 A.2d 1161, 1164 (2001). The critical inquiry is what type of encounter the police initiated at the time they initially approached the defendant. See id. After identifying the type of encounter-e.g., mere encounter, investigative detention, or custodial detention-this *1115 Court must then determine whether the police had the requisite cause for that encounter, respectively, e.g., no suspicion required, reasonable suspicion that criminal activity was afoot, or probable cause for an arrest. Commonwealth v. Ellis , 541 Pa. 285, 293-94, 662 A.2d 1043, 1047 (1995). Commonwealth v. Jones , 474 Pa. 364, 371 n. 4, 378 A.2d 835, 839 n. 4 (1977).
We agree that at the time Appellant indicated he did not live at the residence and officers asked him to move on, he had not been subjected to a seizure. See Commonwealth v. Moore , 11 A.3d 538, 540-41 (Pa.Super. 2010) (loitering defendant not seized where police initially approached simply to speak to him and asked him to move away from a vacant building so officers could discern why the defendant had been there). It was not until Appellant refused to move and shouted at the officers that they exited their vehicle to conduct an investigative detention. The trial court determined that, at this juncture, the officers had a reasonable basis to conduct a pedestrian stop because "they had the obligation to investigate in light of the loitering complaints at roll call which was sufficient to place them on the block and a sufficient basis to ask them why he was on the steps of a home that they knew he did not live in." N.T. Trial, 2/1/11, at 83.
At this point, Appellant chose to flee and drop his gun, and the trial court determined his unprovoked flight in a high-crime area with a weapon provided officer's with probable cause to pursue him. Id. at 83-84; see also Commonwealth v. Jefferson , 853 A.2d 404, 406 (Pa.Super. 2004) (finding a defendant's prompt and unprovoked flight from police officers in a high crime area sufficient to justify a stop). As counsel is not deemed to be ineffective for failing to preserve a meritless issue for appellate review, Appellant is not entitled to relief on this claim. Commonwealth v. Loner , 836 A.2d 125, 132 (Pa.Super. 2003) (en banc ), appeal denied , 578 Pa. 699, 852 A.2d 311 (2003).
Next, Appellant maintains counsel was ineffective for failing to object to the consolidation of his burglary and murder cases.[3] In doing so, Appellant maintains "the Commonwealth cannot point to any evidence in the homicide case that would be admissible in the burglary case." Brief for Appellant at 30-31.[4] Appellant posits he was the "lone commonality" in the "impermeable amalgam of evidence" and that there was a "strong probability" that the jury would not be able to separate the evidence. Id. at 31.
"Whether or not separate indictments should be consolidated for trial is within the sole discretion of the trial court and such discretion will be reversed only for a manifest abuse of discretion or prejudice and clear injustice to the defendant." Commonwealth v. Newman , 528 Pa. 393, 598 A.2d 275, 277 (1991). Pennsylvania Rule of Criminal Procedure 582 provides that joinder of offenses charged in separate indictments or informations is permitted when "the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion." Pa.R.Crim.P. 582(A)(1)(a).
*1116 While evidence of other criminal behavior is not admissible to show a defendant's propensity to commit crimes, such evidence "may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident" so long as the "probative value of the evidence outweighs its prejudicial effect." Pa.R.E. 404(b)(2),(3); Newman , 528 Pa. at 399, 598 A.2d at 278.
Herein, the Commonwealth moved to consolidate the Bills of Information for trial pursuant to Pa.R.Crim.P. 582 in order to establish Appellant's identification as the perpetrator in both matters, as he was in possession of the same firearm on two separate occasions and committed two separate crimes with that weapon within a month. See Commonwealth's Motion to Consolidate Bills of Information and/or Motion to Admit Other Crimes Evidence, filed 1/24/11, at 4 (unnumbered). The Commonwealth also asserted that the probative value of the proffered evidence outweighed the potential for undue prejudice and that the jury would be able to separate the evidence presented in both cases because none of the eyewitness to the incidents overlap and different investigating officers would testify at trial about each crime. Id. at 4-5 (unnumbered). At the conclusion of the hearing, the trial court consolidated the matters and in doing so reasoned:
THE COURT: Okay. Granted. Both of you wrote, and you wrote clearly, the case law is clear, these cases are easily separable. The reality is the consolidation motion and prior bad acts motion in this case are virtually one in the same. The Commonwealth could introduce the gun and the burglary which is simply an entry into an occupied home without permission, could introduce them as a prior bad act. So we can consolidate for judicial convenience.
N.T. Motion, 2/1/11, at 85.
In reviewing this issue on appeal, the PCRA court reasoned as follows:
Next, [Appellant] asserts that trial counsel was ineffective for failing to object when the trial court granted the Commonwealth's motion to consolidate [Appellant's] burglary case and homicide case, thereby failing to preserve the issue for appellate review. The determination of whether separate information should be consolidated for trial is left to the discretion of the trial court, whose decision will not be disturbed absent a manifest abuse of discretion. Commonwealth v. Thomas , 879 A.2d 246, 260 (Pa. Super. 2005). There was no abuse of discretion here for trial counsel to preserve for appeal.
Trial courts must make sure that a defendant is not unduly prejudiced by the consolidation of offenses. Commonwealth v. Lark , 518 Pa. 290, 543 A.2d 491, 497 (1988). If the evidence in each offense would be admissible in a separate trial for the other and the cases are capable of separation by the jury so there is no danger of confusion, they may be consolidated. Id.
[Appellant] here was charged with killing the victim and then, after the commission of a burglary, was charged with possessing an unlicensed handgun that turned out to have been used in the murder. Evidence of each incident would have been admissible for prosecution of the other, as they together formed a chain of events demonstrating the history of each case. Commonwealth v. Drumheller , 570 Pa. 117, 808 A.2d 893, 905 (2002). Evidence of the gun seized during the burglary was relevant to establishing [Appellant's] identity in the murder. See *1117 Commonwealth v. Natividad , 565 Pa. 348, 773 A.2d 167, 174 (2001) (consolidation proper where identity of shooter in murder case was at issue and evidence in separate incident was relevant to establish that identity). Consolidation is also proper where the separate offenses form a pattern which explains defendant's course of conduct. Commonwealth v. Burton , 770 A.2d 771, 778 (Pa. Super. 2001).
Here, the murder took place on a different date than the burglary, none of the eyewitnesses overlapped, and different officers testified to each event. The Commonwealth presented the cases in an easy to follow manner and the jury instructions were clear. When the jury is able to separate the evidence in each case, there is no prejudice from consolidation. Commonwealth v. Burton , 770 A.2d 771, 779 (Pa. Super. 2001) (overruled on other grounds). [Appellant] has not successfully shown prejudice from the consolidation, which is his burden. Commonwealth v. Rivera , 565 Pa. 289, 773 A.2d 131, 137 (2001).
Based on the above case law and evidence in the instant case, the consolidation ruling was proper and well within the discretion of the court. Any challenge of it would have no chance of success. As stated above, counsel cannot be found ineffective for failing to preserve for appeal a meritless issue. As this issue is meritless, counsel is not ineffective for failure to preserve for appeal the issue of consolidation of Petitioner's cases.
PCRA Court Opinion, filed 7/20/17, at 9-10.
Following our review of the record, we discern no abuse of discretion or prejudice in the trial court's analysis and agree that Appellant has failed to establish the consolidation of the matters constituted a clear injustice to him. He supports his contentions with bald allegations that the waiver of this issue prejudiced him and general claims of jury confusion as a result of the consolidation; thus, a challenge to counsel's effectiveness on this basis fails.
Appellant next asserts trial counsel was ineffective for failing to object when the trial court permitted the Commonwealth to impeach Ms. Taylor/Smith with her prior inconsistent statement, thereby failing to preserve for appellate review a challenge based upon the Commonwealth's failure to authenticate it properly.[5] Specifically, Appellant emphasizes that Ms. Taylor/Smith stated she never signed or adopted the statement, yet the Commonwealth was allowed to use the alleged report to confront her with the testimony of a police officer, Detective George Fetters. Appellant reasons that "[u]pon *1118 hearing such a statement from what is allegedly a sound source, what is purportedly a statement to the police, the potential influence on the jurors is immense." Brief for Appellant at 36.
At the outset, we note that although defense counsel lodged a general objection when the Commonwealth indicated it would question Ms. Taylor/Smith concerning her prior statement line by line, and agree with Appellant that a timely and specific objection is necessary to preserve a challenge for appeal, the trial court specifically instructed defense counsel that a general objection would suffice during the Commonwealth's direct examination of Detective Fetters:
Q. When you first contacted Renee Taylor and said you wanted to speak to her, did she say-was she immediately receptive to that or how did that happen? What happened? What were the circumstances of that?
A. Actually, it took a while for me to get in touch with her. I would say probably four to six weeks before I was actually able to physically get in touch with her and speak to her in person. I initially stated I had heard from her mother first who told me that her daughter-
[Defense Counsel]: I would object to any further hearsay.
The Court: "Objection" is fine. Sustained.
N.T., 2/3/11, at 107.
With regard to Appellant's specific challenge that trial counsel should have objected to Ms. Taylor/Smith's statement on that grounds that it was inadmissible because it had not been properly authenticated, it is axiomatic that the testimony of a witness with personal knowledge may be sufficient to authenticate or identify evidence. In re F.P. , 878 A.2d 91, 93-94 (Pa.Super. 2005) ; Pa.R.E. 901(b)(1). In considering this issue, the PCRA court reasoned as follows:
Ms. Smith refused to sign the written statement at the time that she gave it, and at trial denied having made it. Notes of Testimony, ("N.T.") 02/03/2011, at 83. At trial, Ms. Smith was confronted with her statement, and over objection from trial counsel, the prosecutor went through her statement line by line. N.T. 02/03/2011, at 83-95. Ms. Smith testified that she did not recall being asked any of the questions and further that she did not give any of the answers. N.T. 02/03/2011, at 80-95.
The Commonwealth called Detective Fetters to the stand, who testified that he and his partner recorded Ms. Smith's statement verbatim, and that she had positively identified [Appellant's] picture as the victim's shooter from the photographic array. N.T. 02/03/2011, at 103-05, 110. When asked to sign the statement, Detective Fetters testified that Ms. Smith "freaked out" and said, "I'm not signing nothing. I'm scared for my life. I'm scared for my family." N.T. 02/03/2011, at 111. Upon hearing their mother's reaction, Ms. Smith's children in the next room began to react as well. Detective Fetters then ended the interview and drove the family home. N.T. 02/03/2011, 111-12.
[Appellant] is correct that Pa.R.E. 901 governs but in this case it goes towards weight not admissibility. Rule 901(b) provides that authentication can be provided by a witness, with knowledge, who testifies that the matter is what it is claimed to be.[6 ] Detective Fetters satisfies *1119 this criteria and his testimony is enough to meet Rule 901. Even if the issue had been preserved for appellate review, it would have been rejected.
As stated above, counsel cannot be found ineffective for failing to preserve for appeal a meritless issue. As this issue is meritless, counsel is not ineffective for failure to preserve for appeal the issue of the impeachment of Renee Smith.
PCRA Court Opinion, filed 7/20/17, at 10-11.
The PCRA court's analysis is supported by the evidence of record. Thus, had Appellant's issue not been waived on appeal, we would find that it lacks merit because Appellant has failed to establish all three prongs of an ineffective assistance of counsel claim. See Commonwealth v. Spotz , 624 Pa. 4, 33-34, 84 A.3d 294, 311-312 (2014).[7]
Appellant also contends he was denied effective assistance of counsel because trial counsel sought a consciousness-of-guilt instruction and failed to request a cautionary instruction concerning the prison assault of a witness, Jahmil Miller. "In the context of an ineffectiveness claim, counsel's failure to request a cautionary instruction regarding evidence of other crimes or prior bad acts does not constitute per se ineffectiveness; '[r]ather, in order to obtain relief under such a claim, a defendant must still satisfy each of the three prongs of the test for ineffective assistance of counsel.' " Commonwealth v. Weiss , 622 Pa. 663, 716, 81 A.3d 767, 798 (2013) (citation omitted). To satisfy the reasonable basis prong, the defendant must demonstrate that counsel's course of action had no reasonable basis designed to effectuate his client's interests. Id. It is well-settled law that the decision whether to seek a jury instruction implicates a matter of trial strategy. See Commonwealth v. Lesko , 609 Pa. 128, 221, 15 A.3d 345, 401 (2011). In addition, "trial counsel may reasonably decline to request a limiting instruction with regard to prior criminal misconduct where such an instruction might have served to emphasize what might otherwise have gone relatively unnoticed by the jury." Commonwealth v. Copenhefer , 553 Pa. 285, 306, 719 A.2d 242, 253 (1998).
Upon our review, we find Appellant's claim lacks merit. As the PCRA court explained:
After Mr. Miller testified against [Appellant], he was assaulted on the bus on the way back to prison, with one of the attackers stating, "He took the stand on my man, Cutt," N.T. 02/07/2011, at 74-98.
The admissibility of evidence is a matter addressed solely to the discretion of the trial court, and may be reversed only upon a showing that the court abused its discretion.
*1120 Commonwealth v. Begley , 566 Pa. 239, 780 A.2d 605, 620 (2001). For there to be abuse of discretion, the sentencing court must have "ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." Commonwealth v. Hyland , 875 A.2d 1175, 1184 (Pa. Super. 2005).
Any attempt by a defendant to interfere with a witness' testimony is admissible to show a defendant's consciousness of guilt. Commonwealth v. Rega , 593 Pa. 659, 933 A.2d 997, 1009 (2007), cert. denied, 552 U.S. 1316, 128 S.Ct. 1879, 170 L.Ed.2d 755 (2008) ; see also Commonwealth v. Johnson , 576 Pa. 23, 838 A.2d 663, 680 (2003) ; Commonwealth v Jackson , 401 Pa.Super. 258, 585 A.2d 36, 41 (1991). Mr. Miller's testimony was admissible as it shows evidence of Petitioner's consciousness of guilt. Trial counsel objected to the testimony and obtained this cautionary instruction:
THE COURT: [Mr. Miller's testimony will be used], if believed by you, to help you understand what we call consciousness of guilt. Consciousness of guilt refers to actions, conduct, statements of people that help you have insight into whether or not Karrem Johnson committed the crimes before you. They don't necessarily give you any insight into it.
The law feels about it this way: When a person takes certain actions, makes certain statements, engages in a particular conduct that tells you whether they have a consciousness of guilt. Now, consciousness of guilt in and of itself can never support a verdict of guilty. But the law recognizes that a person who is not guilty would not act in a particular way. And a person who might be guilty would act in a different type of way.
So it's to give you insight into the consciousness and to help you determine how to view the rest of the testimony. It is not-Mr. Johnson is not charged with the assault of Mr. Miller. He is not charged with anything to do with what occurred on February 3 . It is simply to give you insight into the consciousness of guilt if that testimony is accepted by you. That's solely for you to decide.
N.T. 02/07/2011, at 149-51.
Despite [Appellant's] objection, the trial court did instruct the jury with regard to the limited purpose for which it was to consider the testimony regarding the assault on Mr. Miller. Further, even if this testimony had not taken place, it would not have changed the outcome of the trial. In order for there to be prejudice, counsel's act or omission must adversely affect the outcome of the proceedings. [ Commonwealth v. ] Bond , [572 Pa. 588, 604], 819 A.2d [33,] [ ] 42 [ (2002) ]. The decision to have different cautionary instructions is a matter of strategy, which as long as there was some reasonable basis designed to effectuate their clients' interests, is not challengeable. Commonwealth v. Lesko , 609 Pa. 128, 15 A.3d 345, 380 (2011).
PCRA Court Opinion, filed 7/20/17, at 11-13 (emphasis added).
As Appellant acknowledges, it was undisputed at trial that Appellant was not on the bus and in no way directly involved in the attack on Mr. Miller, see Brief for Appellant at 39; therefore, the trial court provided an extensive charge which adequately and accurately reflected the law and explained the limited purpose for which the jury was to consider the evidence surrounding Mr. Miller's assault.
Appellant further claims trial counsel was ineffective for failing to challenge on direct appeal the trial court's denial of *1121 Appellant's motion for mistrial due to the prosecutor's alleged misconduct during summation. In this regard, Appellant highlights the following statements:
During [her] summation, the prosecutor improperly vouched for the credibility of the Commonwealth's witnesses when [s]he referred to Detective George Fetters as a "smart detective" and stated, "Detective Fetters spent almost a year trying to bring Christopher's killer to justice. Bring him before you so that you could hear the evidence against him. He did everything that we would ask a detective to do. He kept following up leads. He got people who knew [Appellant] who were out there that night to tell him in their statements what happened." (N.T. 2/8/11 p. 98, 114). The prosecutor also improperly branded Appellant when [s]he argued, "Ladies and gentlemen, make no mistake, the evidence has proven clearly that you have been sitting in this room for the past week with a murderer. A murderer, that's what he is. We can say it now. (N.T. 2/8/11 p. 100).
Brief for Appellant at 44.[8]
It is axiomatic that "vouching is a form of prosecutorial misconduct, occurring when a prosecutor places the government's prestige behind a witness through personal assurances as to the witness's truthfulness, and when it suggests that information not before the jury supports the witness's testimony." Commonwealth v. Lawrence , 165 A.3d 34, 42 (Pa.Super. 2017) (citing Commonwealth v. Reid , 627 Pa. 78, 112, 99 A.3d 427, 447 (2014) ). "Improper bolstering or vouching for a government witness occurs where the prosecutor assures the jury that the witness is credible, and such assurance is based on either the prosecutor's personal knowledge or other information not contained in the record." Lawrence , supra at 42-43, (citing Commonwealth v. Chmiel , 612 Pa. 333, 450, 30 A.3d 1111, 1180 (2011) (citation omitted) ). In determining whether the Commonwealth improperly vouched for the credibility of Detective Fetters in this case, we find Commonwealth v. Judy , 978 A.2d 1015 (Pa.Super. 2009), to be instructive. In Judy , this Court stressed:
It is settled that it is improper for a prosecutor to express a personal belief as to the credibility of the defendant or other witnesses. However, the prosecutor may comment on the credibility of witnesses. Further, a prosecutor is allowed to respond to defense arguments with logical force and vigor. If defense counsel has attacked the credibility of witnesses in closing, the prosecutor may present argument addressing the witnesses' credibility. Thus, proper examination of the comments of the assistant district attorney in closing requires review of the arguments advanced by the defense in defense summation.
Id. , at 1020 (citation omitted).
Upon our review, we find the prosecutor's comments characterizing Detective Fetters as a "smart detective" who diligently investigated the shooting death of Mr. Lomax did not amount to vouching for the credibility of a Commonwealth witness. In doing so, the prosecutor did not interject her personal belief into the detective's intelligence or the veracity of his testimony, but simply commented thereon, as she was permitted to do. See Commonwealth v. Burno , 626 Pa. 30, 61, 94 A.3d 956, 974 (2014) (stating while it is improper for prosecutor to offer a personal opinion as the defendant's guilt or credibility of a witness, it is entirely proper for her to *1122 summarize the evidence presented, to offer reasonable deductions and inferences therefrom, and to argue that the evidence establish the defendant's guilt).
Moreover, during closing arguments, defense counsel called into question Detective Fetter's investigation, stating that he "somehow" "developed some information" that led him to Ms. Taylor/Smith. N.T., 2/8/11, at 75. Counsel also suggested Detective Fetters mischaracterized his interview with Ms. Taylor/Smith when he stated the Detective "embellished" and failed to record her supposed exclamations and those of her children, stating "What is going on here, ladies and gentlemen?" Id. at 73-74. As such, the prosecutor's statements constituted a fair response to defense counsel's remarks.
Appellant also challenges the prosecutor's reference to him as a "murderer." However, his bald assertions of prejudice premised on the prosecutor's use of that term fail when that reference is viewed in context of the entire closing argument. As the PCRA court explained, "[w]hile the prosecutor's statements may have been unwise, they do not rise to the extremely high level required for a new trial." PCRA Court Opinion, 7/20/17, at 14. See Commonwealth v. Rainey , 540 Pa. 220, 236, 656 A.2d 1326, 1334 (1995) (holding closing arguments in guilt and penalty phases referring to defendant as "criminal" and having "cold-bloodedly murdered" victim fairly represented evidence and were not so graphic as to exceed bounds of permissible oratorical flair).
This is especially so in light of the fact that on two separate occasions, the trial court instructed the jury concerning the import of a prosecutor's statements: "Now, ladies and gentlemen closing statements are not evidence.... The statements of attorneys are never, ever evidence." N.T. Trial, 2/2/11, at 20, 22; N.T. Trial, 2/8/11, at 43-44. Finding, therefore, that the contested references were within the reasonable latitude accorded the prosecution in presenting its version of the case, we discern no arguable merit to Appellant's claims of prosecutorial misconduct; accordingly, we cannot conclude that trial counsel was ineffective for failing to raise this issue on direct appeal.
Finally, Appellant maintains he is entitled to a new trial based upon his discovery of the criminal activities of former Philadelphia Police Homicide Detective Ronald Dove which occurred years after Appellant's trial in an unrelated matter.[9] Appellant argues that because former Detective Dove was one of the officers involved in the questioning a Commonwealth witness who identified Appellant as the perpetrator in May of 2009, the evidence of his criminal acts, an article in the January 23, 2015, edition of the Philadelphia Inquirer, will not be used solely for purposes of impeachment. In doing so, Appellant reasons the after-discovered evidence calls into question the validity of an *1123 averment in the Affidavit of Probable Cause that was used to arrest Appellant on homicide charges. We disagree.
Section 9543 delineates seven classes of allegations that are eligible for relief under the PCRA. See 42 Pa.C.S.A. § 9543(a)(2). Of relevance here is the "after-discovered evidence" provision, which provides that a claim alleging "the unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced" is cognizable under the PCRA. 42 Pa.C.S.A. § 9543(a)(2)(vi). To be eligible for relief under such a claim, a petitioner must prove that "(1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict." Commonwealth v. Cox , 636 Pa. 603, 614, 146 A.3d 221, 228 (2016).
Here, Appellant's broad assertions that former Detective Dove's convictions call into question the validity of an averment in the Affidavit of Probable case does not satisfy the third prong of the after discovered evidence test. See Commonwealth v. Alphonso Griffin , 137 A.3d 605, 610 (Pa. Super. 2016), appeal denied , 157 A.3d 476 (Pa. 2016) ("A defendant seeking a new trial must demonstrate he will not use the alleged after-discovered evidence 'solely to impeach a witness's credibility.' "). In addition, former Detective Dove's criminal convictions that occurred years after Appellant's trial have no bearing on Appellant's own case. See Commonwealth v. Foreman , 55 A.3d 532 (Pa. Super. 2012) (filing of criminal charges against detective in an unrelated matter does not meet the after-discovered evidence test since such evidence would be used solely to impeach the credibility of the detective).
As the PCRA court states, former Detective Dove was a "tertiary witness," and "the purpose of his testimony was to corroborate Detective Fetters' testimony. Dove's charges may have caused a reasonable jury to distrust his testimony, but even without it, the Commonwealth would still likely have prevailed." PCRA Court Opinion, filed 7/20/17, at 15-16. Appellant cannot show that the proffered "evidence" of Detective Dove's convictions would lead to a different result, for there is no evidence the former detective did anything inappropriate in the instant matter. See Foreman, supra , 55 A.3d at 537-538 (finding appellant failed to satisfy fourth prong of after-discovered evidence test where appellant filed to show any nexus between his case and criminal charges filed against case officer on unrelated matter).
Therefore, for all of the above reasons, we conclude Appellant is due no relief on any of his claims and affirm the PCRA court's Order denying Appellant's PCRA Petition without a hearing.
Order affirmed.[10]

42 Pa.C.S.A. §§ 9541 -9546.

One of the officers knew the resident of the home in front of which Appellant sat was an elderly man who lived alone.

On direct appeal, this Court determined Appellant had waived this issue as a result of trial counsel's failure to lodge an objection to the consolidation of the cases. Commonwealth v. Johnson , No. 457 EDA 2011, unpublished memorandum at 17-18, 60 A.3d 581 (Pa.Super. filed August 27, 2012).

Appellant does not argue the converse; i.e . that no evidence of the burglary case would have been permissible in the homicide case.

On direct appeal, this Court noted the following:
When the Commonwealth first mentioned Ms. Smith's statement to police, and asked that it be marked as exhibit C-10, Appellant made no objection. See N.T. Trial, 2/3/11, at 82. While Appellant did object a short time later, it was to the following statement by the Commonwealth "What I am going to ask you to do is to go through this line by line[,] each question. I will ask you if you were asked that question and then you say yes or no, and then I will read the answer to you and I will ask you if that's the answer you gave and you can say yes or no."Id. at 83. In response to this, Appellant merely stated "objection." Id. The court overruled Appellant's general objection, and the Commonwealth proceeded to question Ms. Smith regarding the statement she gave police. Consequently, because Appellant did not make a specific objection to the admission of Ms. Smith's statement on the basis that it was not properly authenticated, he has waived this argument on appeal. Commonwealth v. Johnson , No. 457 EDA 2011, unpublished memorandum at 18-19 (Pa.Super. filed August 27, 2012). (citing Commonwealth v. Montalvo , 434 Pa.Super. 14, 641 A.2d 1176, 1185 (1994).

Specifically, Pa.R.E. 901 states:
(a) In General. To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.
(b) Examples. The following are examples only-not a complete list-of evidence that satisfies the requirement:
(1) Testimony of a Witness with Knowledge. Testimony that an item is what it is claimed to be.
* * *
Pa.R.E. 901(a),(b).

This is especially so in light of our finding in our prior Memorandum decision that "[b]ecause Ms. Smith and Ms. Bunch claimed at Appellant's trial that they did not witness Lomax's shooting, their prior inconsistent statements to police became admissible as substantive evidence. See Commonwealth v. Simmons , 541 Pa. 211, 662 A.2d 621, 637 (1995) (citation omitted) ("[i]t is well established that prior inconsistent statements are admissible as substantive evidence and for impeachment purposes")." Commonwealth v. Johnson , No. 457 EDA 2011, unpublished memorandum at 10 n. 2, 60 A.3d 581 (Pa.Super. filed August 27, 2012).

Defense counsel objected to these statements following closing argument, and made a motion for a mistrial, which the trial court denied. N.T. Trial, 2/8/11, at 120-123.

Numerous defendants in recent years similarly and unsuccessfully have sought relief under the PCRA due to former Detective Dove's criminal misconduct. Detective Dove was fired by the Philadelphia Police Department for allegedly covering up evidence in an unrelated homicide matters involving a girlfriend. He ultimately was arrested and charged with: obstructing justice, unsworn falsification to authorities, tampering with/fabricating evidence, hindering prosecution, flight, and conspiracy CP-51-CR-0001382-2015, Commonwealth v. Ronald S. Dove . The charges against former Detective Dove have resulted in a judgment of sentence of thirty days by virtue of his guilty plea entered on April 26, 2017. Trial Court Opinion, filed 7/20/17, at 16. We take judicial notice of the criminal docket at CP-51-CR-0001382-2015, Commonwealth v. Ronald S. Dove , and the convictions reflected on thereon.

While Appellant's appeal was pending in this Court, counsel for Appellant filed an Application for Remand on August 17, 2017, and an Application to Withdraw as Counsel on August 31, 2017. In a Per Curiam Order filed on September 8, 2017, this Court deferred these matters to the panel assigned to decide the merits of this appeal, and in a subsequent Per Curiam Order filed on September 22, 2017, permitted Appellant to file a supplemental brief.
According to Appellant's Application for Remand, on August 15, 2017, he filed a second amended PCRA petition alleging the United States Eastern District of Pennsylvania decision in Brooks v. Gilmore , No. 15-5659 (E.D. Pa. Aug. 11, 2017), appeal filed , Brooks v. Greene , et al. , No. 17-2971 (September 11, 2017) found a reasonable doubt instruction similar to that provided herein was "unconstitutional" and granted federal habeas corpus relief. In addition, in his Application to Withdraw as Counsel, counsel acknowledges he did not challenge the jury instruction in the amended PCRA petition that is the subject of the instant appeal, and, as a result, posits he has a "conflict of interest that prevents him from continuing to represent [ ] [A]ppellant in this appeal." Therefore, counsel urges this Court to remand for the appointment of new counsel to raise the jury instruction issue in the instant appeal and in "other proceedings" as current counsel "may have rendered ineffective assistance." See Application to Withdraw, filed 8/31/17, at ¶¶ 7-10.
As counsel admits, this issue was not raised in Appellant's amended PCRA petition which is the subject of this appeal or included in Appellant's 1925(b) statement of errors complained of on appeal. "Issues not included in the [1925(b) s]tatement ... are waived." Pa.R.A.P. 1925(b)(4)(vii). Moreover, our Supreme Court has stressed that:
a claim not raised in a PCRA petition cannot be raised for the first time on appeal. [The Court] reasoned that [p]ermitting a PCRA petitioner to append new claims to the appeal already on review would wrongly subvert the time limitation and serial petition restrictions of the PCRA. The proper vehicle for raising this claim is thus not the instant appeal, but rather is a subsequent PCRA petition.
Commonwealth v. Santiago , 579 Pa. 46, 62, 855 A.2d 682, 691 (2004).
Counsel has indicated he filed a second amended PCRA petition in the Court of Common Pleas raising this issue on August 15, 2017. As it appears the issue is pending in that court, counsel is free to argue the claim and pursue his application to withdraw in the trial court. Notwithstanding, we remind Appellant that the decisions of a federal district court are not binding on this Court. Commonwealth v. Giffin , 407 Pa.Super. 15, 595 A.2d 101, 107 (1991).
As such, we deny PCRA counsel's Application for Remand and deny his Application to Withdraw without prejudice to Appellant to pursue the matters he raised in his second amended PCRA petition in the trial court.