J-S64006-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARVIN E. HILL | : | |
| | : | |
| Appellant | : | No. 2579 EDA 2017 |

Appeal from the Judgment of Sentence April 5, 2013
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005356-2011

BEFORE: BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:                     **FILED NOVEMBER 30, 2018**

Marvin E. Hill appeals *nunc pro tunc* from his aggregate judgment of sentence of sixteen-and-one-half to forty-three years imprisonment following his non-jury convictions for third-degree murder, firearms not to be carried without a license, carrying firearms on public streets in Philadelphia, and possession of an instrument of crime. We affirm.

On January 7, 2010, . . . in response to a radio call, Officer James Bryan arrived at the 1300 block of Cumberland Street and found Stacey Linwood Sharpe, Jr., lying in the street shot. Officer Bryan transported Sharpe to Temple University Hospital, where at 10:24 p.m., he died. Sharpe suffered two gunshot wounds, one to the back that hit his lung and exited through the chest, and the other to the back of the right thigh.

On January 7, 2010, at about 6:30 p.m., Katerina Love was sitting at her window in her home on the 1200 block of West Cumberland Street when she heard gunshots. She looked out the window and saw [Appellant] shoot Sharpe about three or four times and then run southbound on 13th Street. Ms. Love described the shooter as "dark skin, almost six feet, about 130 pounds, clean shaven, maybe 20 or 21-years-old, black pants, a

black jacket with a red polo horse on it and a black hat with the red polo horse." Ms. Love recognized [Appellant] as a man she had seen nearly every day outside of the store on 12th and Cumberland Street.

On May 11, 2010, Ms. Love identified [Appellant] from a photo array. At trial, Ms. Love did not identify [Appellant], testifying that she did not remember the incident.

From the 1200 block of Cumberland Street, officers recovered six, nine-millimeter fired cartridge cas[ings ("FCCs")], one bullet specimen and two bullet jackets. According to Police Officer Edward Eric Nelson, the six recovered [FCCs] were fired from the same firearm and both bullet jackets were fired from the same firearm.

On January 8, 2010, Detective Thorsten Lucke recovered surveillance video from a store located on the 2500 block of Sartain Street, a little over a block from the shooting. The video recorded the interior of the store, focusing at the door. The video showed [Appellant], who was wearing a knit hat with a Polo emblem, repeatedly entering and exiting the store for about an hour prior to the time of the murder. At 6:31 p.m., Tyree Alston, who was visible in the video standing outside of the store, pointed down the street and then walked out of view with a second unidentifiable person.

On April 28, 2010, Detective Nordo of the Homicide Unit was directed by an assigned detective to locate [Appellant], Michael Hill, and Alston, who had been identified from a surveillance video as potential witnesses to the homicide. Detective Nordo located [Appellant] and his brother on the 2500 block of Sartain Street in Philadelphia. Detective Nordo transported [Appellant] to the Police Administration Building ("PAB") in an unmarked minivan, while Michael Hill was transported in a separate vehicle.

At approximately 5:30 p.m., they arrived at the PAB and, pursuant to the assigned detective's instructions, entered the building through the rear entrance, the Police Detention Unit (PDU). [Appellant] was patted down and taken to the Homicide Unit. [Appellant] was seated on a bench in the Homicide Unit and told to wait.

At around 8:30 p.m., Detective Nordo interviewed Michael Hill. Michael Hill indicated that on January 7, 2010, at about 6:30 p.m., he was at the store at the corner of Sartain and Cumberland Streets, when Sharpe walked by and Alston started following him. Michael Hill then saw Alston pull out a gun and shoot Sharpe. Subsequently, on May 28, 2010, Michael Hill gave a second statement in which he indicated that both [Appellant] and Alston followed Sharpe and then he heard gunshots. The next day, [Appellant] told Michael Hill that he and Alston had shot Sharpe. On April 28, 2010, upon conclusion of Michael Hill's interview, which ended well past Detective Nordo's shift, Detective Nordo left the PAB.

On April 29, 2010, at 12:10 p.m., for reasons unknown to the court, [Appellant] was placed in a cell in the PDU. He remained in the cell for approximately fifteen minutes. At 12:25 p.m., [Appellant] was checked out of the PDU cell and taken back to the homicide unit.

Detective Nordo arrived back at the homicide unit in the early afternoon and found [Appellant] sitting at a desk. At 1:55 p.m., Detective Nordo began taking [Appellant]'s statement. Because Detective Nordo believed that at all times [Appellant] was considered and being treated as a witness, he did not give [Appellant] *Miranda* warnings.

Detective Nordo credibly testified that [Appellant] was never placed in handcuffs, neither when transported in the police vehicle nor while at the PAB. [Appellant] never asked to have an attorney present during the interview. [Appellant] at all times appeared cooperative and forthcoming with information during his interview. After [Appellant] gave his statement he was free to leave, and did so.

[Appellant] testified during the motion hearing that in January of 2010 he had been brought into the PAB as a witness in the same homicide investigation and he stayed at the PAB for three days while he was interviewed before he was released. This court credited this testimony and [Appellant]'s testimony that on April 29, 2010, after he was informed of his brother's statement, he decided to give a similar statement himself.

On May 27, 2010, Tyree Alston gave a statement to police. Alston explained that on January 7, 2010, [Appellant], Michael

- 3 -

Hill, himself and others were hanging around the store on Sartain and Cumberland Streets. [Appellant] saw Sharpe and told Alston that Sharpe owed [Appellant] money. [Appellant] then ran after Sharpe and shot him. [Appellant] and Alston then went back to [Appellant's] home, where [Appellant] explained that he shot Sharpe because, "[i]f [he] let him get away with keeping [his] package, then anyone else would do it." On July 21, 2011, Alston sent [Appellant] a letter apologizing for giving the statement to police and indicated that his statement was a lie. At trial, Alston testified that it was two unidentified males who actually shot Sharpe, not [Appellant].

On May 31, 2010, Detective Sean Mellon of the fugitive squad began attempting to locate [Appellant]. Over the next few months, the Detective made many attempts, at about nine different locations, to locate [Appellant]. On February 15, 2011, [Appellant] was arrested at his aunt's house at 1913 East Orleans Street.

At trial, Vincent Carter testified on behalf of [Appellant]. On January 7, 2010, at 6:30 p.m., Carter was driving on 13th Street and turned onto Cumberland Street. When Carter turned onto Cumberland, he saw one person shooting another person. Carter described the shooter as wearing a hoodie, skull cap, jeans and boots.

Trial Court Opinion, 7/15/13, at 2-6 (citations and unnecessary capitalization omitted).

Following the non-jury verdict, Appellant was sentenced as indicated above on April 5, 2013. Appellant filed the instant *nunc pro tunc* appeal following the restoration of his post-sentence and direct appeal rights.

Appellant presents the following questions to this Court, which we have reordered for ease of review.

I.  Was the evidence insufficient to establish that [A]ppellant violated the [U]niform [F]irearm [A]ct because there was insufficient evidence to establish that [A]ppellant carried the firearm in a vehicle or concealed on or about his person?

II. Did the trial court abuse its discretion in not ordering a new trial when the verdicts of guilt were against the weight of the evidence when the evidence of identification of [A]ppellant as the perpetrator of the crimes was vague, conflicting, contradictory and impeached?

III. Did the trial court err in admitting the prior inconsistent statement of the Commonwealth witness, Katerina Love, as substantive evidence when this prior inconsistent statement was not adopted by the witness?

Appellant's brief at 2.

We begin with the standard of review applicable to Appellant's claim that the evidence was insufficient to support his firearms conviction.

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Williams*, 176 A.3d 298, 305-06 (Pa.Super. 2017) (citations and quotation marks omitted).

The statute under which Appellant was convicted provides as follows in relevant part: "any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of

- 5 -

abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree." 18 Pa.C.S. § 6106(a)(1). Hence, "[i]n order to convict a defendant for carrying a firearm without a license, the Commonwealth must prove: (a) that the weapon was a firearm, (b) that the firearm was unlicensed, and (c) that where the firearm was concealed on or about the person, it was outside his home or place of business." **Commonwealth v. Parker**, 847 A.2d 745, 750 (Pa.Super. 2004) (internal quotation marks and citation omitted).

Appellant does not dispute that he lacked a license, or that the weapon at issue was a firearm; rather, he contends that "The Commonwealth in this case did not prove that the defendant was carrying the gun in a vehicle or concealed on his person." Appellant's brief at 11. Appellant argues that, looking at the evidence in the light most favorable to the Commonwealth, all that was proven is that "the perpetrator came down the street with the firearm in his hands." **Id**. He contends that there was "insufficient evidence [to] for the fact finder to make a determination that the perpetrator had the weapon in a vehicle or concealed on his person outside of conjecture and surmise." **Id**. We disagree.

At trial, the Commonwealth questioned Ms. Love regarding statements she had given to police. In the first, given on January 7, 2010, Ms. Love indicated that the shooter "pulled out a gun" and fired multiple shots at the victim. N.T. Trial, 1/22/13, at 150. In another interview the following day,

Ms. Love indicated that she did not see the shooter draw the weapon, but only looked up after the first shot when the gun was already out. *Id*. at 167. In a later interview given on May 11, 2010, Ms. Love identified Appellant as the shooter. *Id*. at 174-75.

"[T]he evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." *Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa.Super. 2013) (*en banc*). Here the trial court, sitting as fact finder, credited the evidence that Appellant "pulled out a gun" from concealment. *See* Trial Court Opinion, 10/10/17, at 9. As such, the evidence was sufficient to establish the concealment element of the crime. *See*, *e.g.*, *Commonwealth v. Montgomery*, 192 A.3d 1198, 1201 (Pa.Super. 2018) (holding evidence that the defendant's firearm was tucked into the waistband of his pants with the handle visible was sufficient to show concealment). Appellant's first claim of error merits no relief.

Appellant next contends that the verdict is against the weight of the evidence. The following principles apply to our review of that challenge.

> Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction

that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Commonwealth v. Clay**, 64 A.3d 1049, 1054–55 (Pa. 2013). This standard applies even when the trial judge rendered the verdict at issue as the finder of fact. **See**, **e.g.**, **Commonwealth v. Konias**, 136 A.3d 1014, 1023 (Pa.Super. 2016) (applying the above standard to a weight challenge following a bench trial).

Appellant contends that all of his convictions were contrary to the weight of the evidence "because the identification of [Appellant] as the perpetrator of the crimes was vague, conflicting, contradictory and impeached." Appellant's brief at 7. Further, Appellant argues that there was no physical evidence to connect Appellant to the crime, and surveillance video showed Appellant at the scene prior to the shooting, but at a different location at the time of the incident. **Id**.

The trial court offered the following explanation for its determination that the verdict was not against the weight of the evidence.

> The Commonwealth presented a considerable amount of eyewitness testimony and physical evidence that [Appellant] fatally shot Stacey Linwood Sharpe, Jr. In their initial statements to the police, Katerina Love and Tyree Alston identified [Appellant] as the shooter. [Appellant's] brother, Michael Hill, gave a statement saying that he saw [Appellant] and Alston chase Sharpe and that [Appellant] had confessed that he ([Appellant]) and Alston had shot Sharpe. Despite any recantation at trial, these witness statements were admissible for their truth. Moreover, surveillance video showed [Appellant] at the scene of the murder for about an hour leading up to the murder wearing clothing that matched the descriptions given by Katerina Love and Vincent Carter.

- 8 -

Trial Court Opinion, 10/10/17, at 7-8 (citations omitted). Based upon this evidence, the trial court concluded that the verdicts "did not shock one's sense of justice." *Id*. at 7.

We find no abuse of discretion in the trial court's determination. The court observed the witnesses, considered all of the evidence, and acted within its discretion in choosing "to credit the witnesses' prior inconsistent statements over their recantations." *Commonwealth v. Brown*, 134 A.3d 1097, 1104 (Pa.Super. 2016). Further, the video evidence described by Appellant does not contradict the identification of the witnesses by establishing that Appellant was somewhere else at the time of the shooting; rather, it shows Appellant at a different, nearby location shortly **after** the shooting. Appellant's brief at 8 (citing N.T. Trial, 1/28/13, at 228-29). In making his argument, Appellant essentially asks this Court to make different credibility determinations and weigh the evidence in his favor; however, this Court may not substitute its judgment for that of the fact-finder as to credibility issues or the weight to be given to evidence. *Commonwealth v. Furness*, 153 A.3d 397, 404 (Pa.Super. 2016). Appellant's weight claim entitles him to no relief from this Court.

Finally, Appellant contends that Ms. Love's out-of-court statement to police was improperly admitted at trial because "it was not adopted by the witness and therefore could not be used as substantive evidence by the fact finder." Appellant's brief at 12.

We consider Appellant's argument mindful of the following.

The admissibility of evidence is a matter addressed solely to the discretion of the trial court, and may be reversed only upon a showing that the court abused its discretion. For there to be abuse of discretion, the sentencing court must have ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Johnson*, 179 A.3d 1105, 1119-20 (Pa.Super. 2018) (internal citations and quotation marks omitted).

The general rule is that hearsay, out-of-court statements offered for the truth of the matter asserted, is not admissible. Pa.R.E. 802. However, under Pa.R.E. 803.1, a prior inconsistent statement of a declarant-witness, in the form of a writing signed and adopted by the declarant, is not excluded by the rule against hearsay if the declarant testifies and is subject to cross-examination about the prior statement. Pa.R.E. 803.1(1)(B).

Our review of the record reveals that the last page of Ms. Love's January 7, 2010 statement states: "You have read your statement, and by signing, you affirm as to its truthfulness and accept it as your spoken word." Commonwealth's Exhibit C-33 at 3. There are two signature lines following that affirmation/adoption sentence, one immediately below it and another at the very bottom of the page. Ms. Love's signature appears on the latter. *Id*. Further, at trial, Ms. Love identified the signature as her own and indicated that she recalled signing the statement, and was subject to cross-examination about the statement. N.T. Trial, 1/22/13, at 148, 156. Accordingly, the trial

court did not abuse its discretion in admitting Ms. Love's prior statement as substantive evidence. *See*, *e.g.*, *Commonwealth v. Stays*, 70 A.3d 1256, 1262 (Pa.Super. 2013) (holding prior out-of-court identification of defendant, signed by the witness, was admissible as substantive evidence where witness subsequently declined to identify the defendant and disavowed the prior statement but was subject to cross-examination about it).

Having concluded that none of Appellant's issues is meritorious, we affirm his judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/30/18

- 11 -