J-S12019-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| ARJUNA MASON | : | |
| Appellant | : | No. 2496 EDA 2019 |

Appeal from the PCRA Order Entered July 22, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009930-2012,
CP-51-CR-0009933-2012

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| ARJUNA MASON | : | |
| Appellant | : | No. 2497 EDA 2019 |

Appeal from the PCRA Order Entered July 22, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009930-2012,
CP-51-CR-0009933-2012

BEFORE:  LAZARUS, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                **FILED JULY 20, 2021**

Arjuna Mason appeals from the order, entered in the Court of Common Pleas of Philadelphia County, dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  Counsel seeks to withdraw his representation on appeal pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d

213 (Pa. Super. 1988) (en banc).  Upon review,[1] we affirm the PCRA court's

order and grant counsel's motion to withdraw.

The trial court set forth the facts and procedural history of this case as

follows:

> [O]n October 21, 2011, [Ronald Parrish went] to a [convenience] store located at 6605 Chew Avenue to purchase a cigar[.]  . . . Parrish testified that, at approximately 11:45 [p.m.], he arrived at the [] store, . . . purchased the cigar, and [returned] to his vehicle[.  Parrish] estimated that he was in the store for roughly two to three minutes[.]  As [Parrish] exited the store, [he] noticed a person approaching him from the opposite side of the street with a raised gun aimed at him.  [Parrish] immediately darted around his vehicle to the driver's side . . . and tried to start his vehicle so that he could get away.  As [Parrish] was trying to escape, the person who had been approaching [him] was outside the closed driver's side window, displaying the weapon inches from [Parrish]'s head and ordering [Parrish] to get out of the car and to "give it up[.]"  [Parrish] was able to start his vehicle and pull away but the person fired several shots at [him].  Two of the shots hit [Parrish]—one entered the middle of his back and made contact with his right lumb[a]r spine and the second shot hit his shoulder.  [Parrish], injured and still bleeding, drove himself to Chestnut Hill Hospital[,] where medical professionals transferred him to Abington Hospital, the closest hospital with a trauma unit.
>
> At the hospital, Parrish described the shooter to police as 5'7" to 5'8" in height, weighing roughly 160 [pounds], with a "Muslim" beard, and wearing a hoodie, pullover hat, and black jacket with a white design on it.  After viewing a photo array of individuals who matched this description, Parrish identified [Mason], saying, "this looks like the guy who shot me."  Police subsequently

---

[1] Mason has complied with the dictates of **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), which requires the filing of "separate appeals from an order that resolves issues arising on more than one docket." **Id.** at 977. **See also Commonwealth v. Johnson**, 236 A.3d 1141 (Pa. Super. 2020) (en banc) (revisiting **Walker** holding) and **Commonwealth v. Larkin**, 235 A.3d 350 (Pa. Super. 2020) (en banc) (same).  We have consolidated Masons' appeals *sua sponte*.

obtained surveillance footage from a nearby business and were able to see a man in a black jacket with a distinctive white design on the back.

That same night, at approximately 1:22 [a.m.], police sent out a flash radio call regarding a gunman holding a male against his will at 149 West Sharpnack Street. Two police officers who had just finished processing the crime scene at the [convenience] store where Parrish was robbed responded to the call[,] as the address was only [four] blocks away. Police officers testified that when they arrived at the front door of the residence, a female peeked out of a window three times but was pulled away each time by someone. Police determined that the situation was a barricade [and called] SWAT, fire personnel, and medical personnel [] to the scene. Once the entire property was secured, both front and back, Sharda Frye and Ijanaya Clark exited the property. Approximately [five to ten] minutes later, [Mason] exited the property with his shirt off and his hands above his head. Officer Michael Bransfield, who secured the back of the residence, testified that he saw [Mason] looking out of the third-floor window of the house, wearing a black jacket. Officer Bransfield ordered [Mason] to come downstairs, but [Mason] ignored him and went back inside the property. Officer Bransfield testified that he heard a loud crashing sound and then saw [Mason], still wearing a black jacket, standing on the back roof of the property, walking back and forth. After being ordered to exit the residence again, [Mason] went back into the house and returned to the roof, this time without the black jacket. Police officers ordered [Mason] to remove his [T]-shirt and walk out of the front door of the house with his [T]-shirt in hand. This time, [Mason] complied and he was apprehended by authorities who were waiting at the front of the property.

Inside the residence, police found victim Anthony Mitchell lying dead in the first-floor back bedroom[] with a gunshot wound to the head. In the third-floor unit of the residence, police recovered a 9-millimeter handgun on an outside window sill. They further recovered the black jacket [Mason] had been wearing. Sergeant Daniel Ayres, who had interviewed Parrish at the hospital that same night, noticed that the black jacket had a distinctive white design that matched the jacket described by Parrish. He further noticed that [Mason]'s physical appearance matched the description Parrish provided of his attacker. Sergeant Ayres provided this information to homicide detectives, who then showed a photo array to Parrish. Parrish identified [Mason]. A

police firearms expert tested the ballistics evidence recovered from 149 West Sharpnack Street, the [] store [at 6605 Chew Avenue], and Parrish's vehicle[,] and found that all of the bullet specimens were fired from the 9-millimeter gun recovered from the third floor of 149 West Sharpnack Street. Forensic analysts tested blood stains found on the [T]-shirt [Mason] was wearing at the time of his arrest and determined that two of the blood stains matched the DNA of the decedent Anthony Mitchell.

Trial Court Opinion, 12/9/20, at 2-4 (internal citations omitted); **see also id.**, 8/4/14, at 3-4.

The investigator assigned to the case, former Detective Ronald S. Dove of the Philadelphia Police Department Homicide Unit, was one of several officers to arrive at the scene on West Sharpnack Street. Detective Dove also obtained the search warrant for Parrish's vehicle, which was executed by Detective Timothy Hartman. However, Detective Dove did not take any witness statements or collect physical evidence. **See** N.T. Motion Hearing, 11/18/13, at 43-44; **see also** N.T. Jury Trial, 11/20/13, at 145; **id.**, 11/21/13, at 13, 24-26; **id.**, 11/25/13, at 44-53. Nor did Detective Dove testify at Mason's trial. **See generally** N.T. Jury Trial, 11/20/13; **id.**, 11/21/13; **id.**, 11/22/13; **id.**, 11/25/13; **id.**, 11/26/13.

On November 26, 2013, a jury found Mason guilty of first-degree murder, aggravated assault, and two counts each of firearms not to be carried without a license and possession of an instrument of crime (PIC). On January 10, 2014, the trial court sentenced Mason to the mandatory sentence of life imprisonment without the possibility of parole on the first-degree murder charge. The court further sentenced Mason to 10-to-20 years' state

- 4 -

incarceration on each charge of carrying a firearm without a license and two-and-one-half-to-five years' state incarceration on each charge of PIC, to run concurrently. This Court affirmed Mason's judgment of sentence on August 10, 2015. *Commonwealth v. Mason*, 131 A.3d 87 (Pa. Super. 2015) (Table). The Pennsylvania Supreme Court denied Mason's petition for allowance of appeal on March 8, 2016. *Commonwealth v. Mason*, 134 A.3d 55 (Pa. 2016) (Table).

On January 22, 2015, Detective Dove was arrested and charged with obstructing administration of law, tampering with and fabricating physical evidence, and related charges. Detective Dove admitted to helping his girlfriend, Erica Sanchez, destroy evidence and flee from authorities after she killed her former paramour in the fall of 2013. Pursuant to his negotiated plea agreement, Detective Dove was sentenced on April 25, 2017, to 24 months' county incarceration, with parole at 30 days, plus 3 years of reporting probation.

On June 9, 2017, Mason timely filed a *pro se* PCRA petition, which was amended on June 23, 2017 by appointed counsel, David Cornish, Esquire. On December 6, 2018, this matter was reassigned to the Honorable Genece E. Brinkley following the Honorable Steven R. Geroff's retirement from the bench. On June 18, 2019, the PCRA court issued its notice of intent to dismiss the petition pursuant to Pa.R.Crim.P. 907. On July 22, 2019, the court dismissed Mason's petition based upon lack of merit. Mason timely appealed to this Court on August 21, 2019. Thereafter, the court permitted Attorney

Cornish to withdraw; it subsequently appointed John Belli, Esquire, to represent Mason on appeal on December 12, 2019. On September 19, 2020, Mason, through Attorney Belli, filed a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. That same day, Attorney Belli filed a **Turner**/**Finley** no-merit letter and a motion to withdraw.

Mason raises the following issue for our review:

Did the trial court err, abuse its discretion, and/or make a mistake of law when it denied [Mason's PCRA petition] seeking relief[] due to [after-]discovered evidence and also [] a pattern of conduct for the Philadelphia Police Department Homicide Unit[] when the PCRA court reasoned [that] evidence of [Mason]'s guilt was substantial[,] the material would only be used for impeachment[, and] could not be used for another permitted purpose?

Brief of Appellant, at 6.

Before reviewing the merits of Mason's appeal, we must determine whether counsel has satisfied the procedural requirements for withdrawal from his representation. **See Commonwealth v. Walters**, 135 A.3d 589, 591 (Pa. Super. 2016). Our Supreme Court has stated that competent counsel must independently review the record before withdrawal shall be permitted. **Turner**, **supra**, at 928, citing **Pennsylvania v. Finley**, 481 U.S. 551, 558 (1987). Such independent review requires proof of: (1) a "no-merit" letter from PCRA counsel detailing the nature and extent of his review; (2) the "no-merit" letter by PCRA counsel listing each issue the petitioner wished to have reviewed; and (3) PCRA counsel's explanation, in the "no-merit" letter, as to why the petitioner's issues are meritless. **Commonwealth v. Pitts**, 981 A.2d 875, 876 n.1 (Pa. 2009); **Commonwealth v. Rykard**, 55 A.3d 1177, 1184

- 6 -

(Pa. Super. 2012). Additionally, the PCRA or appellate court must independently review the record and agree that the petition was meritless. *See id.*

In *Commonwealth v. Friend*, 896 A.2d 607 (Pa. Super. 2006), this Court announced an additional prerequisite requirement for counsel seeking to withdraw in collateral proceedings:

> PCRA counsel who seeks to withdraw must contemporaneously serve a copy on the petitioner of counsel's application to withdraw as counsel, and must supply to the petitioner both a copy of the "no-merit" letter and a statement advising the petitioner that, in the event that the court grants the application of counsel to withdraw, he or she has the right to proceed *pro se* or with the assistance of privately retained counsel.

*Id.* at 614.[2]

Here, counsel has substantially complied with the *Turner*/*Finley* and *Friend* requirements. Counsel has detailed the nature and extent of his review, served a copy of his petition to withdraw and brief upon Mason, and informed him of his right to proceed *pro se* or with privately retained counsel.[3] Additionally, counsel raised Mason's issues in the form of a brief and explained

---

[2] This Court's holding in *Friend* was subsequently overruled on other grounds by the Supreme Court in *Pitts*. However, the additional requirement that counsel provide copies of the relevant documentation to the petitioner remains intact. *Commonwealth v. Widgins*, 29 A.3d 816, 818 (Pa. Super. 2011).

[3] Mason has not raised any additional issues, either *pro se* or through private counsel.

why his claims are meritless. We now turn to an independent review of the record to determine whether his claims merit relief.

This Court's standard of review regarding an order dismissing a PCRA petition is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. **Commonwealth v. Walls**, 993 A.2d 289, 294 (Pa. Super. 2010). We view the evidence of record in a light most favorable to the Commonwealth as prevailing party. **Commonwealth v. Fahy**, 959 A.2d 312, 316 (2008). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. **Walls**, **supra** at 294-95.

Instantly, Mason claims that he is entitled to post-conviction relief based upon "after-discovered evidence." **See** 42 Pa.C.S.A. §§ 9543(a)(2)(vi) (petitioner eligible for relief where conviction or sentence resulted from unavailability at trial of exculpatory evidence that has subsequently become available and would have changed outcome of trial). Specifically, he points to Detective Dove's April 26, 2017 conviction for fabricating evidence and related charges, which stem from Detective Dove helping his girlfriend escape prosecution after killing her former paramour in 2013. **See** PCRA Petition, at 6/23/17, at 6. It is well-settled that, to obtain relief based on after-discovered evidence, an appellant must demonstrate that such evidence: (1) could not have been obtained through due diligence prior to the conclusion of trial; (2) is not merely corroborative or cumulative; (3) will not be used solely to

impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted. **Commonwealth v. Pagan**, 950 A.2d 270, 292 (Pa. 2008). Mason is entitled to no relief.

In **Commonwealth v. Johnson**, 179 A.3d 1105 (Pa. Super. 2018), this Court held that evidence of Detective Dove's criminal misconduct is insufficient to satisfy the after-discovered evidence test where such misconduct has no connection to the appellant's own case. **Id.** at 1123.[4] In **Johnson**, Detective Dove was a "tertiary witness" whose testimony was offered to corroborate the testimony of another detective. **See id.** Appellant argued that evidence of Detective Dove's criminal misconduct, which occurred years after his own trial, "call[s] into question the validity of an averment in the [a]ffidavit of [p]robable [c]ause that was used to arrest [the appellant] on homicide charges." **Id.** In concluding that the appellant was not entitled to relief, we noted that, because there was no evidence that Detective Dove did anything inappropriate while handling the appellant's case, the appellant failed to demonstrate that his after-discovered evidence would not be used solely for impeachment. We further noted that, for the same reason, the appellant "cannot show that the proffered 'evidence' of Detective Dove's convictions would lead to a different result." **Id.**

---

[4] "Numerous defendants in recent years similarly and unsuccessfully have sought relief under the PCRA due to former Detective Dove's criminal misconduct." **Johnson**, **supra** at 1123 n.9.

- 9 -

Here, Detective Dove did not testify at Mason's trial. Nevertheless, Mason submits that evidence of Detective Dove's conviction could "undermine [Detective Dove's] and the Homicide Unit's reliability by demonstrating they had, for example, lied about evidence or actions of the witnesses in this case and in other cases. . . . Everything Detective Dove and the Homicide Unit has claimed to have occurred was, presumably, false[.]" PCRA Petition, 6/23/17, at 13. Mason submits that, in the alternative, this evidence "would show [Detective Dove's] habit . . . of falsifying and tampering with evidence, in addition to the Homicide Unit's routine practice of wrongfully answering, falsifying[,] and tampering with evidence." *Id.* Under these circumstances, Mason has failed to establish that the proffered evidence would not be used solely for impeachment. Moreover, we agree with the trial court that evidence of Mason's guilt was overwhelming,[5] and that, because there is no evidence

_____

[5] Overwhelming evidence of Mason's guilt includes, *inter alia*, that: police were called to a convenience store where a man matching Mason's description, wearing a black jacket with a distinctive white design, attempted to rob Parrish with a 9-millimeter handgun; Parrish was struck by two bullets from a 9-millimeter handgun; police obtained surveillance video of the shooter wearing a black jacket with a white design; later that same night, police responded to a 911 call and found Mason, wearing the same jacket, on the third floor of a residential building, where he ignored police commands; police found a gunshot victim, who was shot with a 9-millimeter handgun, dead on the first floor of the residence after Mason exited; police found the black jacket with the white design and a 9-millimeter handgun on the third floor of the residence after Mason exited; two bloodstains on Mason's T-shirt contained the decedent's DNA; Parrish identified Mason to police as the shooter from a photo array; and Ijanaya Clark, who was inside the residence when the victim was killed, stated that Mason was alone with the decedent when she heard a
*(Footnote Continued Next Page)*

that Detective Dove mishandled Mason's case, the jury's verdict would not have been affected by the introduction of Detective Dove's criminal conviction for an unrelated matter, especially where Detective Dove had limited involvement in the investigation and did not testify at Mason's trial. Trial Court Opinion, 12/9/20, at 9. Therefore, this claim fails. *Johnson*, *supra*; *Pagan*, *supra*.

In his PCRA Petition, Mason also alleges that the Commonwealth committed a *Brady*[6] violation by failing to turn over Detective Dove's personnel file at the time of trial. *See* PCRA Petition, at 6/23/17, at 8-10; *see also* 42 Pa.C.S.A. § 9543(a)(2)(i) (petitioner eligible for relief where conviction or sentence resulted from constitutional violation "which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place"). Because this claim was not included in Mason's 1925(b) statement, however, it is waived. *See* Pa.R.A.P. 1925(b)(4)(vii) (issues not included in

_____

gunshot before police arrived. *See* N.T. Jury Trial, 11/20/13, at 68-89, 114; *id.*, 11/21/13, at 6-8, 40-59, 82-101, 144-50; *id.*, 11/22/13, at 13-30, 59-61; *id.*, 11/25/13, at 7-18.

[6] *Brady v. Maryland*, 373 U.S. 83 (1963) (holding suppression of evidence favorable to defense by the prosecution violates Due Process Clause of the Fourteenth Amendment).

- 11 -

Pa.R.A.P. 1925(b) statement are waived); ***Commonwealth v. Castillo***, 888

A.2d 775, 780 (Pa. 2005) (same).[7]

Order affirmed. Motion to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/20/2021

---

[7] Regardless, overwhelming evidence of Mason's guilt precludes his eligibility for relief on this issue. ***See Commonwealth v. Navidad***, 200 A.3d 11, 25-26 (Pa. 2019) (to establish ***Brady*** violation, defendant must show that evidence could reasonably put entire case in such different light as to undermine confidence in verdict; no ***Brady*** violation resulted from Commonwealth failing to disclose "trove of statements and investigatory paperwork[,] . . . some of [which] were plainly exculpatory on their face, as they identified an alternate suspect who allegedly claimed responsibility for the murder[,]" because appellant's "presence at the scene of the murder was firmly established by testimonial and physical evidence," and because withheld material did not refute evidence that appellant committed carjacking hours before fatal shooting). ***See also Navidad***, ***supra*** at 33 (mere possibility that undisclosed information might have helped defense, or might have affected outcome of trial, insufficient to establish constitutional violation; if no reasonable doubt about guilt whether or not additional evidence is considered, no justification for a new trial).