J-S27037-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSE PAGAN | : | |
| | : | |
| Appellant | : | No. 2205 EDA 2023 |

Appeal from the PCRA Order Entered July 18, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003909-2019

BEFORE:  LAZARUS, P.J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:              **FILED DECEMBER 3, 2024**

Appellant Jose Pagan appeals from the order of the Court of Common Pleas of Philadelphia County dismissing his petition pursuant to the Post-Conviction Relief Act (PCRA).[1]  Appellant claims his trial counsel was ineffective in failing to call a particular witness to testify at his trial.  We affirm.

Appellant was charged with unlawful contact with a minor, endangering the welfare of a child, corruption of a minor, and indecent assault in connection with allegations made by a seventeen-year-old female ("the victim"), who claimed Appellant sexually assaulted her while she was sleeping in bed.

Appellant proceeded to a jury trial, which was held on December 10-12, 2019.  At trial, the victim testified that on January 26, 2019, at approximately 9:00 p.m., she was at home watching her younger brothers while her mother

_____

[*] Former Justice specially assigned to the Superior Court.
[1] 42 Pa.C.S.A. §§ 9541-9546.

was out of the home at a party. Notes of Testimony (N.T.), 12/10/19, at 59-64, 68. Appellant, who is the boyfriend of the victim's mother and the father of the victim's youngest brother, was also in the home. *Id.* at 60-61, 64.

The victim testified that Appellant entered her bedroom and offered her a shot of unidentified brown alcohol. *Id.* at 65-66. When the victim refused to drink it, Appellant repeatedly insisted that she do so. *Id.* The victim indicated that she took a drink of the shot to get Appellant to leave her bedroom, but after he left, she spit it into a water bottle. *Id.* Appellant then returned with another shot of the same brown alcohol. *Id.* The victim again showed Appellant that she put the liquid into her mouth, but spit it into the same water bottle after Appellant was out of sight. *Id.* at 66-67.

The victim fell asleep in her bed wearing tights and a fully zipped "hoodie" sweatshirt and had allowed her one-year-old brother to sleep in her bed with her. *Id.* at 67-69. The victim awoke when she felt someone touching her buttocks.[2] *Id.* at 69-73. The victim indicated Appellant had gotten into her bed wearing only underpants, was facing her while rubbing her buttocks with one hand, and was watching pornography on his cell phone that he was holding in his other hand. *Id.* at 73. Appellant noticed that her hoodie had been unzipped a little bit and her one-year-old brother, who could not walk,

_____

[2] When asked to testify about the details of the assault, the victim became overwhelmed and indicated she was not able to testify. N.T., 12/10/19, at 70-71. After the trial court gave the victim a break outside the presence of the jury and noted on the record that she was hysterical, the victim was able to regain composure and finish her testimony. *Id.* at 71-72.

had been removed from her bed.  *Id.* at 74-75.  After the victim asked Appellant why he was touching her and asked him to leave, Appellant "shushed" her and demanded that she give him a kiss.  *Id.* at 73-74.

Thereafter, the victim got out of bed and looked for her mother, who had returned home but was in her bed sleeping.  *Id.* at 74-76.  The victim began to cry and then called her boyfriend, A.C., to tell him what had just happened.  *Id.* at 76.  A.C. became angry and immediately came to the victim's home, accompanied by his mother.  *Id.*; N.T., 12/11/19, at 11-12.

When A.C. and his mother arrived at the victim's home, the victim opened the door and A.C. began yelling at Appellant, who was standing behind the victim.  N.T., 12/10/19 at 76-79;  N.T., 12/11/19, at 11.  A.C.'s mother managed to push A.C. out of the way and down the steps away from Appellant.  N.T., 12/11/19, at 11-13.  A.C.'s mother asked Appellant what he had done to the victim and he responded, "I'm sorry. I was just playing."  *Id.* at 11-12.  A.C.'s mother questioned how Appellant was just "playing" with the minor victim, when he was in her bed without any clothes on other than underwear.  *Id.* at 12-13.  In response, Appellant remained mute with a "blank look" on his face.  *Id.*  When A.C.'s mother asked to speak with the victim's mother, Appellant slammed the door in her face.  *Id.* at 12-16.

The victim's mother was awoken by the noise, brought the victim inside the home, closed the door, and listened to the victim's account of the events.  N.T., 12/10/19, at 77-79.  The victim's mother turned to Appellant ask what was going on, Appellant replied "Babe, I'm sorry, I'm sorry, I was so horny."

*Id.* at 77. As the victim sensed her mother did not to believe her version of the events, she told her mother, "[Appellant] just admitted it to you. You can't be in denial when he admitted it in front of your face." *Id.* at 77-78.

Once A.C.'s mother called the police, several officers arrived at the home just minutes later and listened to the victim's allegations. N.T., 12/10/19, at 79-80; N.T., 12/11/19, at 60. Although the officers repeatedly knocked on the front door of the home, the victim's mother refused to open the door for approximately fifteen minutes. N.T., 12/11/19, at 15, 61. When the victim's mother eventually opened the door, she began screaming at the officers and the victim, asking them "why they were doing this" and demanding that the officers to "get the fuck out." *Id*. at 61-62. The officers were eventually able to enter the victim's home, but Appellant had fled the scene. *Id*. at 17, 62.

The victim also called her father, who described the victim's tone as hysterical when she told him about the assault. N.T., 12/10/19, at 42-81. The victim's father immediately left his place of employment and drove to the victim's home to support his daughter. *Id.* at 44, 81. The victim's father accompanied her to the Special Victims Unit of the police station where she gave a statement to detectives and submitted to a rape kit examination, as the victim was afraid Appellant might have assaulted her while she was asleep. *Id.* at 46, 81-84.

Thereafter, the officers obtained an arrest warrant for Appellant who was later found in Limerick, Pennsylvania. N.T., 12/11/19, at 15. Appellant did not have any known addresses or associations with Limerick. *Id*.

After the close of the prosecution's case, the trial court asked Appellant on the record whether he had any witnesses or evidence that he wished to present on his behalf. *Id.* at 116. Appellant did not speak up and ask to present any witnesses but acquiesced to his counsel's assertion that the defense was only planning to present two stipulations. *Id*. Appellant indicated that he was satisfied with trial counsel's representation. *Id*. at 115.

At the conclusion of the trial, the jury convicted Appellant of all charges. On March 12, 2020, the trial court sentenced Appellant to an aggregate term of eight to sixteen years' imprisonment to be followed by three years' probation. The trial court also informed Appellant that he was required to comply with registration requirements pursuant to the Sexual Offender Notification and Registration Act (SORNA). Appellant filed a timely post-sentence motion, which was subsequently denied by operation of law.

On appeal, this Court affirmed the judgment of sentence. *See Commonwealth v. Pagan*, 1602 EDA 2020 (Pa.Super. Nov. 9, 2021) (unpublished memorandum). Appellant did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

On December 9, 2022, Appellant filed a timely counseled PCRA petition, alleging that trial counsel was ineffective in failing to call an individual named "Tiffany Martin" to testify at his trial that she was on the phone with Appellant during the time of the assault. As such, Appellant claimed that Ms. Martin's testimony disproved the victim's allegations that he assaulted her. Appellant filed two certifications in which PCRA counsel averred that "Tiffany Martin" was

willing and able to testify that she was "fully engaged" in a phone conversation at the time the crimes were alleged to have occurred and that Appellant was also "fully engaged" in the conversation.

On June 1, 2023, the PCRA court issued notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907, finding that Appellant's witness certification did not comply with PCRA requirements. In addition, the PCRA court noted that Appellant had waived his ineffectiveness claim as he admitted in a colloquy at trial that he did not wish to call any witnesses to testify on his behalf.

On June 19, 2023, Appellant filed objections to the Rule 907 notice, claiming the proposed witness's name was actually "Tiffany Gorham," and admitting he had misidentified her to due a "miscommunication." Appellant attached a certification signed by Tiffany Gorham, but the certification did not contain any identifying information, such as her address or birthdate.

On July 18, 2023, the PCRA court denied Appellant's petition. Appellant filed a timely appeal. PCRA counsel filed a petition to withdraw his representation, which the PCRA court granted and appointed new counsel.

Appellant raises the following issues for our review on appeal:

1. Was PCRA counsel ineffective for filing a deficient witness certification of Ms. Tiffany Gorham, thus precluding review under the Post Conviction Relief Act?

2. In the alternative, did the PCRA court err in dismissing [Appellant's petition as a matter of law in the situation where trial counsel's failure to interview and call Ms. Gorham as a witness at trial caused

[Appellant] prejudice and would have changed the outcome of the trial[?]

Appellant's Brief, at 5-6 (suggested answers omitted).

Appellant presents a layered ineffectiveness claim on collateral appeal by arguing that PCRA counsel was ineffective in filing a deficient PCRA petition which precluded review of Appellant's claim that trial counsel was ineffective for failing to call Tiffany Martin/Gorham as a witness.

We acknowledge that our Supreme Court has held that "a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." *Commonwealth v. Bradley*, 261 A.3d 381, 401 (Pa. 2021). However, our courts have clarified that:

> *Bradley* did not guarantee a PCRA petitioner substantive review of claims of PCRA counsel's ineffectiveness, nor did it create an absolute right to remand for development of those claims. As our Supreme Court has reiterated:
>
> > In some instances, the record before the appellate court will be sufficient to allow for disposition of any newly-raised ineffectiveness claims. However, in other cases, the appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter. Consistent with our prior case law, **to advance a request for remand, a petition would be required to provide more than mere boilerplate assertions of PCRA counsel's ineffectiveness**; however, where there are material facts at issue concerning claims challenging counsel's stewardship and relief is not plainly unavailable as a matter of law, the remand should be afforded.
>
> *Commonwealth v. Parrish*, ––– Pa. ––––, 273 A.3d 989, 1002 (2022) (quoting *Bradley*, *supra* at 402 (cleaned up, emphasis added)).

*Commonwealth v. Lawrence*, 309 A.3d 152, 155 (Pa.Super. 2024) (emphasis added).

In addressing Appellant's ineffectiveness claims, we are guided by the following principles:

> It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error. *See Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975–76 (1987); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The PCRA court may deny an ineffectiveness claim if "the petitioner's evidence fails to meet a single one of these prongs." *Commonwealth v. Basemore*, 560 Pa. 258, 744 A.2d 717, 738 n.23 (2000).... Because courts must presume that counsel was effective, it is the petitioner's burden to prove otherwise. *See Pierce*, *supra*; *Commonwealth v. Holloway*, 559 Pa. 258, 739 A.2d 1039, 1044 (1999).

*Commonwealth v. Johnson*, 179 A.3d 1105, 1114 (Pa.Super. 2018) (quoting *Commonwealth v. Natividad*, 938 A.2d 310, 321 (Pa. 2007)).

Further, "[a] petitioner's failure to satisfy any prong of this test is fatal to the claim." *Commonwealth v. Wholaver*, 177 A.3d 136, 144 (Pa. 2018) (citation omitted). "[A] court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the *Strickland* test, the court may proceed to that element first." *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1117–18 (Pa. 2012) (citing *Strickland*, *supra*; *Commonwealth v. Albrecht*, 720 A.2d 693, 701 (Pa. 1998)).

More specifically, in order to succeed on a claim that counsel was ineffective for failing to call a witness, a petitioner must prove that

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Treiber*, 121 A.3d 435, 464 (Pa. 2015) (quoting *Commonwealth v. Puksar*, 951 A.2d 267, 277 (Pa. 2008) (citation omitted)).

Appellant's layered claim of ineffectiveness fails for several reasons. First, we agree with the PCRA court's determination that Appellant waived his claim that trial counsel was ineffective for failing to call Tiffany Martin/Tiffany Gorham to testify at trial. The certified record shows that the trial court conducted a colloquy with Appellant and specifically asked whether Appellant had any witnesses or evidence he wanted to present. Despite this opportunity, Appellant did not indicate in any manner that there were any witnesses that he desired to present on his behalf. Instead, he acquiesced in counsel's assertion that the defense would simply be presenting stipulations. In the same colloquy, Appellant indicated that he was satisfied with trial counsel's representation.

In *Commonwealth v. Brown*, 196 A.3d 130 (Pa. 2018), the Supreme Court found that the petitioner had waived his claim that his trial counsel was ineffective in failing to present an additional witness for the defense. The

Supreme Court noted that the petitioner had participated in a colloquy on the record in which he was advised of all the witnesses that his counsel intended to present and acknowledged that there were no other witnesses he wanted to testify on his behalf. The Supreme Court noted that "a defendant who makes a knowing, voluntary, and intelligent decision concerning trial strategy will not later be heard to complain that trial counsel was ineffective on the basis of that decision. *Id*. at 174 (quoting **Commonwealth v. Paddy**, 800 A.2d 294 (2002)).

Likewise, in this case, Appellant cannot now claim that trial counsel was ineffective for failing to present a particular witness when he agreed with trial counsel's decision to forgo presenting witnesses for the defense.

Second, Appellant failed to support his ineffectiveness claim with the requisite affidavit or certification from trial counsel with respect to his basis for declining to present Ms. Martin/Gorham as a witness. In **Commonwealth v. Roney**, 79 A.3d 595, 606-607 (Pa. 2013), the Supreme Court found that the appellant had offered an unsupported claim that his trial counsel had no reasonable basis for failure to present evidence of an alternate suspect. The Supreme Court noted that the appellant had failed to present any affidavit or evidence showing the extent, if any, of trial counsel's investigation into the matter and what information trial counsel had regarding the potential suspect. As such, the Supreme Court concluded that the appellant's claim that trial counsel failed to properly investigate the individual in question was pure speculation. *Id.*

In the same manner, in this case, Appellant failed to present any affidavit from trial counsel containing relevant information as to whether trial counsel knew the proposed witness existed, whether he had pursued any investigation into whether the witness was available and willing to testify, and whether he had evaluated whether the witness would have given testimony that was helpful to the defense. As such, Appellant's petition did not support his allegation that trial counsel had no reasonable basis for failing to call Appellant's proposed witness to testify at his trial.

Lastly, Appellant failed to show that he was prejudiced by the absence of the testimony of Ms. Martin/Gorham, who would have allegedly testified at trial that she was on the phone with Appellant at the time of the commission of these crimes. As noted above, Appellant argued that Ms. Gorham would have claimed that it "would have been impossible" for Appellant to have assaulted the victim as he was "fully engaged" on her on the phone during this time period.

Even if Ms. Gorham was found to be an available witness who was willing to testify for the defense and her testimony was proved to be true, we agree with the PCRA court's assessment that this evidence was not helpful to establish Appellant's asserted defense. *See Commonwealth v. Thomas*, 44 A.3d 12, 24 (Pa. 2012) (quoting *Commonwealth v. Chmiel,* 889 A.2d 501, 546 (Pa. 2005) ("Trial counsel's failure to call a particular witness does not constitute ineffective assistance without some showing that the absent

witness'[s] testimony would have been beneficial or helpful in establishing the asserted defense").  The PCRA court explained its rationale as follows:

Appellant's use of a cell phone at the time of the crimes, whether watching pornography or "fully engaged" in conversation with someone named "Tiffany Martin" or "Tiffany Gorham," does not render it impossible for him to have committed the crimes beyond the limited viewpoint of someone on the phone.  This victim unwaveringly testified that Appellant had been watching his phone while rubbing her.  "Tiffany Martin or Gorham" –- who was not physically present at the time of the crimes – would have zero idea what Appellant had been doing while he was on the other end of the phone with her unless of course she had been participating in the attack.

Moreover, the Commonwealth's evidence demonstrated that this victim had promptly, repeatedly, and consistently reported to multiple individuals -- her boyfriend, her boyfriend's mother, her father, police at the scene, and the detective at the Special Victims Unit -- about Appellant's insistence that she drink shots of alcohol with him.  She consistently voiced his attempts to impair her judgment or render her unconscious before the assault.  She immediately related that after she had gone to sleep, Appellant climbed in bed with her, wearing only his underwear and rubbed her buttocks with one hand while he had watched pornography on his cell phone with the other hand.

The victim credibly recalled that her hoodie had been partially unzipped and her one-year-old brother, who was unable to walk, had been moved out of her bed.  When the victim yelled and cursed at Appellant and told him to get out of her room, Appellant "shushed" her, leaned over, and told her to give him a kiss.  The victim, crying and upset, immediately ran, and reported the incident to her boyfriend, who immediately came to the scene with his mother….

Appellant repeatedly demonstrated his consciousness of guilt through his own words and his flight from the scene. … When [A.C.'s mother] confronted Appellant at the front door of the home and asked him what he had done to [the victim], Appellant replied, "I'm sorry, I was just playing."  When [A.C.'s mother] inquired why Appellant was "playing" in bed with [the victim] wearing only his underwear, to which Appellant remained silent.  When the

- 12 -

victim's mother asked Appellant what was going on, Appellant replied: "Babe, I'm sorry, I'm sorry, I was so horny." By the time the police arrived, Appellant had fled the scene.

PCRA Court Opinion, 2/13/24, at 13-14.

We agree with the PCRA court's assessment that Appellant did not meet his burden to show he was prejudiced by the absence of Ms. Martin/Gorham's testimony such that he was denied a fair trial. **See Treiber**, **supra**. Accordingly, Appellant's ineffectiveness claims against trial counsel and PCRA counsel necessarily fail.

For the foregoing reasons, we affirm the PCRA court's order denying Appellant's petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/3/2024