J-S07015-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KIMBERLY MARIE MAURER | : | |
| | : | |
| Appellant | : | No. 1192 MDA 2025 |

Appeal from the PCRA Order Entered August 22, 2025
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0001412-2020

BEFORE:  BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED: JUNE 18, 2026**

Kimberly Marie Maurer appeals from the order denying her petition filed in accordance with the Post Conviction Relief Act ("PCRA").  We affirm.

We previously recounted the history of this matter as follows:

A fair summary of the evidence presented by the Commonwealth reveals that the facts of this case are beyond tragic.  [M.S.] was born in 2008.  [Appellant] entered [M.S.]'s life when she started dating [M.S.'s father] Scott [Schollenberger] in 2011.  At that time, [M.S.] was an appropriately developed child, both physically and mentally.  [Appellant] moved in with Schollenberger [and M.S.] and the couple had three additional children together.  During the years that followed, [M.S.] became the victim of physical and psychological abuse in the form of severe neglect.  Eventually, [M.S.] was ostracized from the household and locked in a bedroom that had no lights and the windows covered, and he was deprived of meals.  Multiple visitors to the house never knew that [M.S.] existed.  In fact, [M.S.] had never been enrolled in school or in a home-schooling program.

On May 26, 2020, the Annville Township Police Department responded to a report of a dead child at the home of Schollenberger and [Appellant] on South White Oak Street.  Upon

approaching [M.S.]'s bedroom, police noticed an overwhelming stench of bodily excrement. The bedroom door was secured with multiple locks from the outside. Once the door was opened, the police observed [M.S.]'s deceased emaciated body in a sparsely furnished room with a significant amount of feces and urine. A door covered one of the bedroom windows by having been screwed to the wall. Two other windows had curtains sealed with duct tape. There were no operating light bulbs in the room. Old feces and food were observed under the bed.

When [M.S.]'s body was taken for autopsy, it was covered in fecal matter. Despite being twelve-years old, he weighed [forty-seven and one-half] pounds and was [fifty] inches tall, which reflected a body mass index that was below the first percentile for his age. The autopsy revealed multiple medical conditions consistent with starvation, including under mineralized bones, osteopenia, misshaped bones, maldeveloped kidneys, liver and heart, and soft tissue atrophy. [M.S.]'s stomach had a large amount of partially digested food, to the point that the stomach was overfull. Review of [M.S.]'s skeletal frame reflected a lack of weight bearing activity, such that he was likely immobile or bedridden for a significant period. The autopsy revealed that the cause of death was blunt force head trauma complicat[ed by] starvation and malnutrition.

On September 11, 2020, [Appellant] was criminally charged [with first-degree murder, conspiracy to commit first-degree murder, third-degree murder, conspiracy to commit third-degree murder, endangering the welfare of children, conspiracy to commit endangering the welfare of children, involuntary manslaughter, and conspiracy to commit involuntary manslaughter.]

[Appellant]'s [multi-day jury] trial began on March 15, 2022, and the jury returned a verdict on March 22, 2022, finding [Appellant] guilty of all charges. [Before Appellant's trial, Schollenberger pled guilty to first-degree murder, endangering the welfare of children, and conspiracy, receiving a sentence of life in prison without the possibility of parole]. On June 1, 2022, the trial court sentenced [Appellant] to serve life imprisonment on the charge of first-degree murder. The court also imposed consecutive sentences of [five to ten] years on the charge of endangering the welfare of children, and [five to ten] years on conspiracy to commit first-degree criminal murder. The remainder of [Appellant]'s convictions merged for sentencing purposes.

- 2 -

*Commonwealth v. Maurer*, 311 A.3d 561, 2023 WL 8434287, at *1-2 (Pa.Super. 2023) (non-precedential decision) (cleaned up).

Appellant timely appealed, and this Court affirmed her judgment of sentence. *Id*. at *6. Specifically, we concluded that Appellant waived her claims regarding the sufficiency of the evidence, change of venue, and inflammatory exhibits. *Id*. at *3-6. We alternatively held that the evidence would have been more than adequate to affirm Appellant's judgment of sentence had she not waived her sufficiency claims. *Id*. at *3 n.5. Appellant submitted a timely *pro se* PCRA petition and, after the court appointed PCRA counsel, filed an amended petition alleging ineffective assistance of both trial and appellate counsel. The court held an evidentiary hearing at which Andrew Race, Esquire, who was trial counsel, and Michael Light, II, Esquire, who was appeal counsel as well as co-counsel at trial, testified.

The court subsequently issued an opinion and order denying Appellant's PCRA petition. She appealed and *sua sponte* filed a statement pursuant to Pa.R.A.P. 1925(b). The PCRA court directed us to its prior opinion and order denying relief. Appellant now presents the following three questions for our review:

> 1. Whether the [PCRA] court erred as a matter of law and/or abused its discretion in determining that Attorney Light was not ineffective for failing to preserve for appellate review the sufficiency of the evidence issues by failing to set forth in the Rule 1925(b) statement, or in the appellate brief, the elements of any of the crimes [Appellant] was convicted of that were allegedly not established by the Commonwealth?

2. Whether the [PCRA] court erred as a matter of law and/or abused its discretion in determining that Attorney Light was not ineffective for failing to ensure that all relevant records from the trial court were provided to the Superior Court, so that a complete record could be reviewed to decide the issues raised on appeal?

3. Whether the [PCRA] court erred as a matter of law and/or abused its discretion in determining that Attorney Race and Attorney Light were not ineffective for failing to ask for a jury instruction regarding inflammatory photos/testimony?

Appellant's brief at 4 (cleaned up).

This Court reviews the denial of a PCRA petition to determine "whether the findings of the PCRA court are supported by the record and are free from legal error." *Commonwealth v. Howard*, 285 A.3d 652, 657 (Pa.Super. 2022) (cleaned up). Ultimately, "[i]t is an appellant's burden to persuade us that the PCRA court erred and that relief is due." *Commonwealth v. Stansbury*, 219 A.3d 157, 161 (Pa.Super. 2019) (cleaned up).

Appellant assails the adequacy of trial and appeal counsels' representation. As our High Court has explained, "counsel is presumed to be effective, and a petitioner must overcome that presumption to prove" her entitlement to relief. *See Commonwealth v. Simpson*, 112 A.3d 1194, 1197 (Pa. 2015). In that regard:

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her

- 4 -

action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043 (Pa.Super. 2019) (cleaned up). The petitioner's failure to sustain any prong of the test defeats the claim. ***See***, ***e.g.***, ***Commonwealth v. Rivera***, 199 A.3d 365, 374 (Pa. 2018).

Counsel cannot be found to be ineffective "for failing to raise a meritless claim." ***Commonwealth v. Johnson***, 139 A.3d 1257, 1272 (Pa. 2016) (cleaned up). Likewise, counsel cannot be "deemed to be ineffective for failing to preserve a meritless issue for appellate review." ***Commonwealth v. Johnson***, 179 A.3d 1105, 1115 (Pa.Super. 2018) (cleaned up). As to whether counsel's performance lacked a reasonable basis, "the question is not whether there were other courses of action that counsel could have taken, but whether counsel's decision had any basis reasonably designed to effectuate his client's interest." ***Commonwealth v. Williams***, 141 A.3d 440, 463 (Pa. 2016) (citations omitted). Finally, with respect to the final prong, a reasonable probability is one "sufficient to undermine confidence in the outcome." ***Johnson***, 139 A.3d at 1284 (cleaned up).

Initially, Appellant maintains that Attorney Light provided ineffective assistance for failing to preserve a challenge to the sufficiency of the evidence to sustain her convictions for first-degree murder and conspiracy. ***See*** Appellant's brief at 16-17. First-degree murder is a criminal homicide that "is

committed by an intentional killing." 18 Pa.C.S. § 2502(a). "Intentional killing" is defined as "[k]illing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(d). With respect to the charge of conspiracy:

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission [s]he:
>
> > (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
> >
> > (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a).

Appellant avers that the "the Commonwealth failed to meet its burden of proving that [she] acted with intent to kill M.S" in order to sustain her conviction of first-degree murder. *See* Appellant's brief at 18. Additionally, she claims that the evidence was insufficient to uphold her conviction of conspiracy to commit first-degree murder where she did not promote or facilitate the murder of M.S. *Id*. at 21. At trial, Appellant proffered a defense that when she attempted to care for M.S., Schollenberger would abuse her, and thus she asserts that she "took no overt actions to cause the death of M.S. Rather it was her fear [of Schollenberger] and lack of actions which lead [*sic*] to his death." *Id*. at 20. Accordingly, she contends that counsel was ineffective for failing to preserve this issue for appellate review. *Id*. at 22.

The PCRA court determined that Appellant was not prejudiced by Attorney Light's omission of a specific challenge to the sufficiency of the evidence. *See* PCRA Court Opinion, 8/22/25, at 7. As we previously held in her direct appeal, even if Appellant's counsel preserved the sufficiency challenges for appellate review, the evidence in this case was substantial to support her convictions for first-degree murder and conspiracy. *See Maurer*, 2023 WL 8434287, at *3 n.5; *see also Commonwealth v. Reed*, 971 A.2d 1216, 1220 (Pa. 2009) (explaining that "where a decision rests on two or more grounds equally valid, none may be relegated to the inferior status of *obiter dictum*" (cleaned up)). Appellant's assertion that she merely failed to act to protect M.S. from Schollenberger, and did not conspire with him to commit murder, is belied by the record and would nevertheless fail to negate an intent to cause M.S. serious bodily harm or death.[1] *See Commonwealth v. Tharp*, 830 A.2d 519, 527 (Pa. 2003) (affirming Tharp's judgment of sentence for first-degree murder where the evidence established that she consistently starved her daughter and that "the very length of time needed to bring about [the victim]'s death by starvation suggests a unique type of coldness and

---

[1] Notably, at trial during cross-examination of Appellant, the Commonwealth introduced a plethora of messages Appellant sent to Schollenberger and various friends by Facebook and text, revealing that she was frequently frustrated and annoyed with M.S., and had a particular disdain for him. *See* N.T. Trial, 3/21/22, at 1113-49, 1159-81. The messages also established that Appellant punished M.S. by locking him in his room and depriving him of meals due to his purported behavioral issues and the fact that he could not control his urination and bowel movements. *Id*.

deliberation, for within that time there was ample opportunity for reflection, for reconsideration, and for the development of a tinge of sympathy for the child"). Where the record contained sufficient evidence to support Appellant's convictions, such as we have here, counsel cannot be found to be ineffective for failing to preserve those challenges for appellate review.

Appellant next alleges that Attorney Light provided ineffective assistance by neglecting to ensure that the photo exhibits were included in the certified record, resulting in waiver of her claim that certain images were inflammatory and without probative value. *See* Appellant's brief at 22, 25. Our High Court has explained the law governing inflammatory evidence as follows:

> Photographs of a murder victim are not *per se* inadmissible. In reviewing a challenge to the trial court's admission of photographs, we employ the abuse of discretion standard. A trial court must engage in the following two-step analysis when considering the admissibility of photographs of homicide victims:
>
> First a trial court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.

*Commonwealth v. Haney*, 131 A.3d 24, 37 (Pa. 2015) (cleaned up). Additionally, "the fact that a medical examiner can describe the victim's wounds to the jury does not render photographs of those wounds irrelevant." *Id*. at 38 (cleaned up).

- 8 -

Appellant moved for a mistrial after the Commonwealth presented a color image of the multiple latches on M.S.'s bedroom door, revealing M.S. in the background lying on the bed covered in feces. *See* Appellant's brief at 23. Counsel's omission of the photo exhibits from the certified record resulted in waiver of her claim that the trial court erred in failing to grant her motion for a mistrial. Specifically, Appellant states that the trial court only allowed black and white photos of M.S.'s body at the crime scene to be shown to the jury, while this image was in color. *Id*. Appellant asserts that the photograph was inflammatory and without probative value, and she was deprived of appellate review of that issue when counsel failed to ensure that it was included in the certified record on appeal. *Id*.

Appellant further argues that the Commonwealth displayed color autopsy photos, which were not relevant to her case since Schollenberger had pled guilty to killing M.S. *Id*. at 25. She contends that the testimony from the medical examiner to describe M.S.'s injuries was sufficient on its own, and the inclusion of the photographs was unnecessary. *Id*. Appellant declares that the images were unfairly inflammatory because "child victims are by nature more likely to bring out sensitivities in the minds of jurors than adult victims." *Id*. at 26.

Notwithstanding counsel's omission, the PCRA court remained confident that even if the exhibits had been included in the certified record on direct

appeal, the outcome of this matter would have been the same. [2] *See* PCRA Court Opinion, 8/22/25, at 11. It explained that while the photos of M.S. were unpleasant, they had "significant evidentiary value" because "no matter how articulate a witness could be, a verbal description of the scene where [M.S.] was found could not adequately depict the reality shown in the photograph." *Id*. at 12. Additionally, it concluded that she "offer[ed] nothing to prove the jury was inflamed" by the photographs. *Id*. at 14.

Appellant has failed to establish that her claim has arguable merit, and thus Attorney Light cannot be found ineffective for failing to preserve the meritless claim. *See Johnson*, 179 A.3d at 1115. A review of the challenged

_____

[2] The Supreme Court adopted Pennsylvania Rule of Judicial Administration 5101, *et seq.*, effective April 1, 2024, to remedy "issues related to the custody of exhibits, including the need to retain exhibits for matters on appeal, as well as logistical considerations impacting court administration, such as exhibit storage space." 201 Pa.Code. Ch. 51, Custody of Exhibits Workgroup Adoption Report. Rule 5104 provides that "[e]very judicial district shall promulgate a local rule of judicial administration pursuant to Pa.R.J.A. 103(c) establishing the judicial district's policies and procedures for the custody of exhibits in court proceedings." Pa.R.J.A. 5104. Courts were also permitted to retain existing local rules that complied with Pa.R.J.A. 5101, *et seq*. *See* In re Order Adopting Rules 5101-5105, 9/11/23. Each judicial district must designate a "custodian" to "safeguard and maintain exhibits offered into evidence in a court proceeding." Pa.R.J.A. 5101. The custodian may be a member of court staff or the proponent of the exhibit. *Id*.

In Lebanon County, Criminal Division Rule 52-CrD-646 provides that "the moving party shall keep custody of and be responsible for all non-documentary material submitted into evidence at trial." Lebanon County Rule 52-CrD-646, effective May 1, 2001. Attorney Light was therefore designated by local rule as the custodian of the photographs admitted at trial.

The certified record has now been supplemented with the trial court exhibits.

exhibits reveals that while they were graphic, their evidentiary value outweighed the likelihood of inflaming the jurors' emotions. *See Haney*, 131 A.3d at 37. The picture of the outer door latches to M.S.'s room, where M.S.'s deceased body could be seen in the background lying on a bed covered in feces, was probative as to Appellant's specific intent to kill. Depicted in the image were the steps Appellant took to lock M.S. in his room against his will, and the deplorable conditions in which he lived. As our High Court has previously observed, merely because M.S. was a child did not render photographic evidence of his death inadmissible. *See Commonwealth v. Woodard*, 129 A.3d 480, 495 (Pa. 2015) (holding that the trial court did not err in admitting colored photos of a two-year old child's blunt force trauma injuries and a black and white photograph showing the child's lacerated liver to demonstrate a specific intent to kill).

The autopsy photographs and images of the inside of M.S.'s skull were likewise probative of Appellant's specific intent to kill. The Commonwealth presented a medical examiner to describe M.S.'s cause of death through the autopsy photographs. In particular, he described how M.S. suffered blunt force trauma to his head, which was aggravated by being starved and malnourished. *See* N.T. Trial, 3/15/22, at 208. That the medical examiner could have explained M.S.'s cause of death without the photographic evidence is not itself a reason to exclude them from the jury. *See Haney*, 131 A.3d at

37. The autopsy images also provided the jury with a depiction of the severity of M.S.'s emaciation.

The fact that Schollenberger pled guilty to first-degree murder also does not render the photos irrelevant where, although he pled guilty to that offense, he nevertheless denied at Appellant's trial that he had "beaten" and "starved" M.S. *See* N.T. Trial, 3/18/22, at 931. Hence, Appellant's contentions regarding the imagery depicted at trial have no arguable merit, and counsel cannot be deemed to be ineffective for neglecting to preserve those claims.

Appellant finally assails counsel's failure to object to the court's jury charge, which lacked an instruction on inflammatory evidence.[3] "In reviewing a jury charge, we determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case." *Commonwealth v. Focht*, 334 A.3d 931, 937 (Pa.Super. 2025) (cleaned up).

Appellant maintains that counsel did not have a reasonable basis for declining to object when the court issued its instructions to the jury. *See*

---

[3] Appellant does not portray this issue accurately. In the statement of the questions involved, she avers that Attorney Light and Attorney Race were ineffective for failing to request a jury instruction. *See* Appellant's brief at 4. However, the opening line of her argument states that trial counsel "filed proposed jury instructions to include instructions regarding sensitive and inflammatory images." *Id*. at 26. The remainder of her argument bears out that she takes issue with counsel's failure to object when the court opted not to issue such an instruction to the jury. *Id*. at 26-27. Also, while she claims that both Attorney Light and Attorney Race provided ineffective assistance in this regard, she only mentions Attorney Race in her argument. *Id*. Hence, we will consider this matter as a challenge to Attorney Race's failure to object to the trial court's jury instructions.

Appellant's brief at 27. She argues that the omission of "a limiting instruction regarding the images left the jury the option to put whatever emphasis they deemed appropriate on the images." *Id*.

The PCRA court determined that counsel made a strategic decision when not objecting to the court's jury instructions. *See* PCRA Court Opinion, 8/22/25, at 21-22. At the evidentiary hearing, Attorney Race testified that he did not push for the court to issue this instruction because "had it been given[,] . . . it could highlight the evidence even more than without it." *Id*. at 22. Further, the court maintained that the jurors were only shown pictures on the first day of trial, which lasted for several more days, and the Commonwealth displayed just one image during its closing argument. *Id*. at 23. Finally, the court pointed out that it prevented photos from entering deliberations. *Id*.

The record supports the court's conclusion. As mentioned, Appellant bears the burden to prove that counsel's inaction had "no reasonable strategic basis." *Sandusky*, 203 A.3d at 1043. Attorney Race testified that he opted not to object to the court's instructions to avoid drawing additional attention to the photographs. Therefore, as he provided a reasonable trial strategy, Appellant has failed to meet this prong of the ineffective assistance test. *See Johnson*, 179 A.3d at 1120 ("The decision to have different cautionary instructions is a matter of strategy, which as long as there was some

reasonable basis designed to effectuate their client['s] interests, is not challengeable.").

Overall, Appellant fell short of her burden to provide this Court with a claim of ineffective assistance of counsel that "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Sandusky*, 203 A.3d at 1043. Accordingly, we affirm the order denying her PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 06/18/2026